# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| Bruce Cohn, *Plaintiff*, v. Anna Popescu, TrustHFTwallet.com, and John Does 1 – 20, *Defendants*. | Case No. 1:24-cv-00337 **Plaintiff's Motion for Preliminary Injunction** |

Plaintiff Bruce Cohn hereby requests that the Court enter a preliminary injunction extending the relief granted in the extant Temporary Restraining Order. In support, he respectfully shows the Court the following.

## I.  Preliminary Statement

The Defendants are foreign cybercriminals who stole assets worth more than $2.4 million from the Mr. Cohn in a pig-butchering scam. On August 16, 2024, the Court entered a Temporary Restraining Order freezing the Defendants' assets. Since that time, for the reasons set out below, the evidence that the Defendants are in fact pig-butchering scammers has only grown stronger. Mr. Cohn respectfully requests that the Court issue a preliminary injunction extending the asset freeze through trial, with certain modifications described below.

- 1 -

## II. Evidence Submitted

Mr. Cohn submits the following evidence in support of this Motion.

*Exhibit 1: Bruce Cohn Declaration*. Mr. Cohn is the Plaintiff in this matter. His Declaration describes the TrustHFTwallet scam and provides relevant documentary evidence.

*Exhibit 2: Even Cole Declaration*. Evan Cole is a certified blockchain investigator and the founder of Digital Investigations, LLC. His declaration (i) shows that the Defendants are, in fact, a syndicate of foreign cybercriminals and (ii) describes the pig-butchering epidemic.

*Exhibit 3: Hoda Declaration*. Marshal Hoda is counsel to Mr. Cohn in this matter. His declaration provides documentary evidence showing that the Defendants received notice of the upcoming injunction hearing.

## III. Factual Allegations

Mr. Cohn's Verified Complaint and his prior motion for the extant TRO detailed his allegations against the Defendants. This Motion will avoid repetition, insofar as possible, by focusing on the evidence submitted in support of this Motion and recent developments.

### A. The Scam

The Defendants are a syndicate of foreign cybercriminals who stole over $2.4 million from Mr. Cohn in a pig-butchering scam. The declaration of Bruce Cohn recounts the TrustHFTwallet scam.[1] It attaches evidence

---

[1] Ex. 1, Declaration of Bruce Cohn (hereafter, "Cohn Decl."), *passim*.

showing each stage of the scam from his perspective—from the initial contact through a dating app, to trust-building conversations on WhatsApp, to fake trades and false profits on the TrustHFTwallet platform, to the scammers' demands that he increase his balance by millions to "unfreeze" his funds.

The Cole Declaration explains why there is no doubt that the Defendants are, in fact, a syndicate of pig-butchering scammers. It does so by trenchantly comparing the Cohn Declaration to the paradigm that emerges from the most comprehensive academic study of the pig-butchering epidemic to date.[2] The Cole Declaration also provides evidence showing this epidemic's shocking scope and toll.[3]

### B. Blockchain Tracing

Mr. Cohn engaged Nefture, a blockchain-analytics firm, to trace the assets stolen from him through the blockchain. Nefture's blockchain analysis was fundamental to Mr. Cohn's motion for the extant TRO. Mr. Cohn's Declaration attaches that evidence once again, here, in support of his motion to extend the TRO through the issuance of a preliminary injunction.[4]

### IV. Relief Sought

Mr. Cohn seeks preliminary injunction extending the freeze of the exchange accounts that received the assets stolen from him through trial,

---

[2] Ex. 2, Declaration of Evan Cole (hereafter, "Cole Decl."), ¶¶ 5 – 17 (comparing Cohn Declaration with leading academic paper).

[3] Ex. 2, Cole Decl., ¶¶ 18 – 23.

[4] Ex. 1, Cohn Decl., Att. F (Nefture Report).

with one deviation. As reflected in the proposed order submitted with this Motion, Mr. Cohn does not seek to extend the preliminary injunction as to the Kraken account identified in the TRO.

The standard for issuance of a preliminary injunction has both procedural and substantive aspects. The balance of this Motion will explain why Mr. Cohn has satisfied these requirements.

>    1.   *Mr. Cohn provided the Defendants notice of the injunction hearing and this Motion.*

Under the Federal Rules, "the court may issue a preliminary injunction only on notice to the adverse party."[5] This rule "does not require service of process, but rather requires notice to the adverse party."[6] As the Eleventh Circuit recently noted, "there is a reason Rule 65 allows emergency injunctive relief before service of process."[7] Holding that a preliminary injunction could not issue "before service of process on a defendant abroad would mean that plaintiffs could not obtain initial relief from impending or ongoing harm … for months or even years as the Hague Convention service or alternative service process unfolded."[8]

---

[5] FED R. CIV. P. 65(a)(1).

[6] *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 542 (5th Cir. 2023) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978)).

[7] *Sec. & Exch. Comm'n v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281, at *2 (11th Cir. Apr. 8, 2024).

[8] *Id.*

Mr. Cohn's counsel provided written notice of the upcoming preliminary-injunction hearing to the Defendants on September 6, 2024. He did so by (i) emailing Anna Popescu's email address, (ii) sending a WhatsApp message to Anna Popescu's account, and (iii) sending notice through the customer-service chat on trusthftwallet.com.[9]

> 2. *Mr. Cohn has met the substantive requirements for issuance of a preliminary injunction.*

To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[10] Mr. Cohn has met these requirements for the reasons set out below.

*Element 1: The Merits.* Mr. Cohn alleges that the Defendants are liable for (1) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), (2) conversion, and (3) fraud. He is likely to succeed on the merits of each of these claims.[11]

---

[9] Ex. 3, Declaration of Marshal Hoda (hereafter "Hoda Decl."), at ¶ 3 (describing notice provided and attaching evidence).

[10] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

[11] While venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3), Mr. Cohn is a resident of California. The Court should thus apply California law to Mr. Cohn's common-law conversion and fraud claims.

*RICO Claim*. To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to his business or property, and (3) that the RICO violation caused this injury.[12] To prove a RICO violation, a plaintiff must show that the defendant is (1) a person[13] who engaged in (2) a pattern[14] of racketeering activity,[15] (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[16]

Mr. Cohn's RICO claim is likely to succeed. The Cohn Declaration details the Defendants' scam and provide documentary evidence showing how that scam unfolded.[17] The Cole Declaration, in turn, explains why there is no doubt that the Defendants are a syndicate of professional cybercriminals.[18]

---

[12] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

[13] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[14] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[15] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[16] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

[17] Ex. 1, Cohn Decl., *passim*.

[18] Ex. 2, Cole Decl., ¶¶ 5 – 17.

These declarations show that the TrustHFTwallet scam was the very definition of an enterprise created solely to perpetrate a pattern of wire fraud on a global scale. At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[19]

*Conversion Claim*. To prevail on a conversion claim, a plaintiff must show "(1) [their] ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."[20]

Mr. Cohn's conversion claim is likely to succeed. The Cohn Declaration and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of Mr. Cohn's assets and have not returned them. Numerous courts have found that plaintiffs were likely to succeed on conversion claims in cryptocurrency-related fraud cases.[21]

---

[19] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

[20] *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (Cal. Ct. App. 2014).

[21] *See, e.g.*, *Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or

*Fraud Claim*. To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to his or her damage.[22]

Mr. Cohn's fraud claim is likely to succeed. Again, the Cohn Declaration and the Cole Declaration show that the Defendants intentionally and falsely represented that they would use Mr. Cohn's assets for "trading" cryptocurrency for profit. They intended for these lies to induce Mr. Cohn to transfer his assets, which he ultimately did. These lies were material, and Mr. Cohn acted on them to his detriment.[23]

*Element 2: Irreparable Harm*. Allowing the asset freeze to dissolve would cause irreparable harm. Cybercriminals like the Defendants can and do move crypto assets from address to address in mere seconds, with the click of a button.[24] And while courts can order the freezing and disgorgement of crypto assets held at exchange-based addresses, most assets held in "self-custody" or at non-compliant exchanges are beyond the effective reach of such

---

ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

[22] *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191 (2011), as modified (Aug. 24, 2011).

[23] Complaint, ¶¶ 13 – 17; Ex. 2, Cole Decl., ¶¶ 3 – 5.

[24] Ex. 2, Cole Decl., at ¶ 24 (explaining the risk of irreparable harm in cryptocurrency-related fraud cases and providing leading academic study illustrating these risks).

orders.²⁵ Thus, the tracing of Mr. Cohn's assets to the Receiving Exchanges provides a unique and fleeting opportunity to restrain further dissipation while Mr. Cohn identifies and serve the Defendants. Courts have consistently recognized that these features of blockchain technology justify the issuance of *ex parte* freezing orders in crypto-fraud cases.²⁶

*Element 3: Balancing.* The threatened injury to Mr. Cohn outweighs any damage a freezing order might cause to the Defendants. Mr. Cohn has lost millions, and the order he seeks is his only hope of preserving some assets for recovery. And while an asset freeze might cause temporary inconvenience to the restrained persons, any restraint implemented can be undone should future developments require.²⁷ In addition, the Defendants have received

---

²⁵ *Id.*

²⁶ *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

²⁷ *See, e.g.*, *Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to

notice of this proceeding via the same channels they used to communicate with Mr. Cohn.[28] They can contest the issuance of the injunction at the upcoming hearing or seek to have the injunction dissolved at any point before final judgment.

*Element 4: Public Interest.* A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans" like Mr. Cohn.[29] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[30] and "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[31]

In this case, the public interest weighs particularly heavily in favor of the requested injunction. As detailed in the Cole Declaration, the devastation wrought by the pig-butchering epidemic is breathtaking. The FBI estimates that in 2023 *alone*, pig-butchering scammers stole nearly $4 billion from *tens*

---

transfer the allegedly purloined assets into other accounts beyond the reach of this court").

[28] Ex. 3, Hoda Decl., ¶¶ 3 – 4.

[29] *Licht*, 2023 WL 4504584, at *3.

[30] *Id.*

[31] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

*of thousands* of American victims.[32] CNN has noted that this is "theft at a scale so large that investigators are now calling it a mass transfer of wealth from middle-class Americans to criminal gangs."[33] The public interest overwhelmingly favors preserving victims' only potential source of recovery through the issuance of preliminary injunctive relief.

        3.    *The Court has the authority to issue the asset-freezing injunction Mr. Cohn seeks.*

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff has brought his claims to judgment.[34] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive trust over traceable stolen assets.[35] Mr. Cohn seeks just such relief here.[36] For that reason, the Court has the authority to issue the asset-freezing injunction Mr. Cohn seeks.

---

[32] Ex. 2, Cole Decl., ¶ 22.

[33] *Id.*

[34] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

[35] *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

[36] Complaint, ¶ 33; Ex. 1, Cohn Decl., Att. F (showing tracing of Cohn assets to receiving addresses).

    4.    *The Court should not require a bond.*

Rule 65(c) provides that a court issuing a preliminary injunction should do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[37] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all."[38] The Defendants will not suffer any damages due to the requested asset freeze, which—as explained above—can be undone at any time if the Defendants choose to appear and challenge the injunction. Mr. Cohn thus requests that the Court decline to impose a bond.

### V. Conclusion

For the reasons set out above, Mr. Cohn has met the standards for issuance of a preliminary injunction. He requests that the Court issue this relief in the form of the proposed order submitted with this Motion.

---

[37] FED. R. CIV. P. 65(c).

[38] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

- 13 -

Dated:  September 9, 2024                    Respectfully submitted,

THE HODA LAW FIRM, PLLC

_____
Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
12333 Sowden Road, Suite B
PMB 51811
Houston, TX 77080
o. (832) 848-0036
marshal@thehodalawfirm.com

*Attorney for Plaintiff*