IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| BRUCE COHN, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. 1:24-CV-00337 |
| ANNA POPESCU, § | JUDGE MICHAEL J. TRUNCALE |
| TRUSTHFTWALLET.COM, and § | |
| JOHN DOES 1-20, § | |
| § | |
| *Defendants*. § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR AMENDED
PRELIMINARY INJUNCTION**

Before the Court is Plaintiff's Motion for Entry of an Amended Preliminary Injunction (the "Motion"). [Dkt. 17]. On September 13, 2024, the Court granted Plaintiff's request for a preliminary injunction freezing accounts at four cryptocurrency exchanges to which Plaintiff alleges he has traced his stolen assets. [Dkt. 15]. Plaintiff now seeks an amended preliminary injunction to lift the asset freezes on three cryptocurrency exchange accounts whose owners have provided evidence sufficient to satisfy him that they are not in league with the Defendants.

The Court has reviewed Plaintiff's Motion. For the reasons set out below, Plaintiff's Motion is hereby **GRANTED**.

**I.   Background**

Plaintiff's relevant allegations are as follows. In June 2024, he met a person claiming to be named Anna Popescu on a dating website. ECF. 9-1, Declaration of Bruce

1

Cohn (hereafter "Cohn Decl."), ¶ 3.[1] Popescu eventually told Mr. Cohn about her success investing and trading cryptocurrencies and introduced him to a platform called TrustHFTwallet. *Id.* at ¶ 4. Popescu told Mr. Cohn that she knew how to make profits using TrustHFTwallet and offered to teach him how to do the same. *Id.* She encouraged him to make a TrustHFTwallet account, which he soon did. *Id.*

Over the next several months, Popescu 'trained' Mr. Cohn in cryptocurrency trading using the TrustHFTwallet platform. *Id.* at ¶ 5. When Mr. Cohn was ready to make a deposit on TrustHFTwallet, the platform provided him asset-transfer instructions via its mobile application. *Id.* Mr. Cohn completed the transactions as instructed. *Id.* Each time, the amount of the funds he 'deposited' would then be reflected in his transaction history and account balance on the TrustHFTwallet platform. *Id.* Over time, he sent assets to TrustHFTwallet with a dollar-denominated value of more than $2,400,000.00. *Id.*

Mr. Cohn's balance on the TrustHFTwallet platform appeared to grow rapidly—eventually showing that he had crypto assets worth more than $5 million in his account. *Id.* at ¶ 6. But when he attempted to withdraw his funds, TrustHFTwallet informed him that him that he could not do so in significant quantities without 'leveling up' his account by depositing more money. *Id.* at ¶ 8. Mr. Cohn began to believe he had been scammed. *Id.*

Mr. Cohn now alleges that TrustHFTwallet's explanations as to why he could not withdraw his funds were lies. ECF 1, Verified Complaint, at ¶ 17. He says the real reason TrustHFTwallet would not return his assets is that TrustHFTwallet is not a real trading

---

[1] The Amended Preliminary Injunction set out below is justified on the same evidentiary grounds as the superseded preliminary injunction that it replaces. References are therefore to the evidentiary materials submitted by Plaintiff in support of his initial Motion for Preliminary Injunction. [Dkt. 9].

platform at all. *Id*. Instead, he alleges that he has been the victim of what is known as a "pig-butchering scam." *Id.* at ¶ 4. According to Mr. Cohn, this is a type of investment scam in which the perpetrators deceive victims into depositing their assets on a fake-but-realistic-looking "trading" or "investment" platform, where no trading or investment ever occurs. *Id*. Instead, Mr. Cohn alleges, the assets are simply stolen. *Id*. at ¶ 17.

After retaining counsel, Mr. Cohn engaged Nefture, a blockchain-investigations firm, to perform a "blockchain tracing" report. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. Cohn Decl., Att. F (Nefture Report). Mr. Cohn's investigator was able to trace his allegedly stolen assets to addresses associated with four distinct cryptocurrency exchanges. Immediately after filing this action, Mr. Cohn sought an emergency *ex parte* temporary restraining order ("TRO") requiring that these exchanges temporarily freeze the accounts associated with the blockchain addresses he identified as receiving the assets stolen from him, so that he might preserve some assets for recovery. The Court issued a TRO to that effect, and subsequently extended that TRO by 14 days.

Mr. Cohn now seeks a preliminary injunction that would extend the Court's freezing order through trial as to the accounts at Binance, OKX, and Zedxion that he has identified as receiving his assets. He has submitted three declarations in support of his Motion. His own declaration sets out the allegations recounted above and attaches evidence showing his conversations with Anna Popescu, his transaction history, his blockchain-tracing report, and the TrustHFTwallet platform. Mr. Cohn has also submitted a declaration under the signature of his counsel, which attaches evidence showing that

3

Mr. Cohn provided the Defendants notice of the preliminary injunction hearing via the same means they used to communicate with him.

Mr. Cohn's Motion also attaches the Cole Declaration. Mr. Cole is the founder of Digital Investigations, LLC, a blockchain-investigations firm. ECF 9-2, Declaration of Evan Cole (hereafter "Cole Decl."), ¶¶ 2 – 3. His declaration submits a preprint of a forthcoming academic article that he describes as the most comprehensive study of pig-butchering scams to date.[2] This study compiled and analyzed information about more than 1,300 pig-butchering scams, with the aim of creating a framework for identifying such scams and setting them apart from other forms of cybercrime (and from legitimate investment operations). *Id.* Mr. Cole's declaration provides a detailed comparison of the evidence submitted by the Mr. Cohn with the typology set out in *Examining Pig Butchering*. *Id*. at ¶¶ 8 – 17. It also provides evidence concerning the scope of the pig-butchering epidemic, the devastation this kind of fraud has wrought on victims, and the organizational and money-laundering practices of the pig-butchering scammers. *Id*. at ¶¶ 18 – 23.

In the instant Motion, Mr. Cohn advises the Court that the owners of several cryptocurrency-exchange accounts that were frozen under the superseded preliminary injunction have contacted his counsel and provided evidence sufficient to satisfy him that they are not in league with the Defendants. [Dkt. 17]. For that reason, he has now requested entry of the Amended Preliminary Injunction set out below, which removes all

---

[2] *Id*. at ¶¶ 5 – 6 (citing Marie-Helen Maras, Emily R. Ives, *Deconstructing a Form of Hybrid Investment Fraud: Examining 'Pig Butchering' in the United States*, JOURNAL OF ECONOMIC CRIMINOLOGY, Volume 5 (forthcoming Sep. 2024) (hereafter, "*Examining Pig Butchering*")).

reference to those accounts and will therefore have the effect of lifting the asset freeze as to those accounts.

## II.    Analysis

Mr. Cohn has met the requirements for issuance of the Amended Preliminary Injunction for the following reasons.

To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017). Each of these requisites is addressed in turn below.

Mr. Cohn makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. Complaint, ¶¶ 19 – 31.

To prove a RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962, (2) an injury to his business or property, and (3) that the RICO violation caused this injury. *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023). To prove a RICO violation, a plaintiff must show that the defendant is a person engaged in a pattern of racketeering activity, connected to the acquisition, establishment, conduct, or control of an enterprise. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003).

Mr. Cohn's evidence describes the Defendants' "pig-butchering" scam and provides documentation as to how that unfolded. Cohn Decl., ¶¶ 3 – 11. In particular, Mr. Cohn's Declaration shows how he was deceived into the scam by a person with whom he believed he was developing a personal and even romantic relationship. Cohn Decl., ¶¶ 3

– 9. Furthermore, Evan Cole's Declaration attests as to why Defendants are professional cybercriminals well-versed in these pig-butchering scams that perpetrate a pattern of wire fraud across the globe. Cole Decl., ¶¶ 5–17. As a result of the scam, Mr. Cohn alleges that he lost assets worth more than $2.4 million. Complaint, ¶ 15. In his briefing, Mr. Cohn has provided an order from a Florida federal court that issued a default judgment approving a RICO claim similar to his claim in this case. *See Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023). Mr. Cohn's RICO claim is likely to succeed on the merits.

To prove a conversion claim under California law, the plaintiff must show "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (Cal. Ct. App. 2014). The Cohn and Cole Declarations have demonstrated that the Defendants wrongfully and intentionally took control of Mr. Cohn's assets and have not returned them. Cohn Decl., ¶¶ 3 – 9; Cole Decl., ¶¶ 5 – 17. In his briefing, Mr. Cohn cited a federal cryptocurrency fraud preliminary injunction that similarly found that the plaintiff was likely to succeed on the merits. *See Bullock v. Doe*, No. 23-cv- 3041, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023). Thus, Mr. Cohn is likely to succeed on the merits of his conversion claim.

Finally, to allege a fraud claim under California law, a plaintiff must show (1) the defendant made a misrepresentation, (2) the defendant knew the misrepresentation was false, (3) the defendant's intent to defraud, (4) justifiable reliance, and (5) damages. *OCM Principal Opp. Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 845 (Cal. Ct. App. 2007). Similar to conversion, the Cohn and Cole Declarations have demonstrated

that the Defendants intentionally deceived Mr. Cohn and took control of his assets to trade cryptocurrency for profit under the representation that their investments would be legitimate. Cohn Decl., ¶¶ 3 – 9; Cole Decl., ¶¶ 5 – 17. Mr. Cohn relied on these representations in transferring his savings worth about $2,400,000.00 to the Defendants, which he now seeks to recover. *Id.* Thus, Mr. Cohn is likely to succeed on the merits of his fraud claim.

In total, Mr. Cohn has alleged and provided evidence that the Defendants deceived him and misappropriated his assets in what appears to have been an intentional pig-butchering scam.[3] The Court finds that the similarities between his allegations and the widely known characteristics of this distinctive kind of scam suggest that he will indeed be able to prevail on these claims against the Defendants once a full evidentiary record is developed. The comparison of the Mr. Cohn's evidence to the *Examining Pig Butchering* typology has only strengthened the evidentiary basis for this conclusion since the Court entered the TRO.

In addition, as in the previous order granting the extant TRO, the Court notes that asset freeze Mr. Cohn seeks in this instance is permissible in light of his request for a constructive trust over specific, traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL

---

[3] Complaint, ¶¶ 1 – 4, 14 – 19; Cohn Decl., *passim*; Cole Decl., ¶¶ 5 – 17 (comparing evidence submitted with leading academic study of pig-butchering scams).

2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same). Mr. Cohn's claim that his assets can be traced to the Binance, Zedxion, and OKX is again supported by the blockchain analysis submitted in support of his Motion. *See* Cohn Decl., Att. F (blockchain-tracing report).

Mr. Cohn has also shown that irreparable harm will ensue absent the restraining order he seeks. The Cole Declaration details how the assets allegedly stolen from Mr. Cohn could be further transferred to unretrievable locations at any time, with the click of a button. Cole Declaration, ¶ 24 (explaining that "crypto assets can be moved in seconds from address to address," and that Mr. Cohn will be unlikely to recover if they are further dissipated). Several federal courts have found that this exigency justified issuance of freezing orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[4]

Next, the Court finds that the threatened injury to Mr. Cohn outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. The Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See, e.g.*, *Licht v. Ling*, No. 3:23-CV-1018, 2023 WL 4504585, at *3 (N.D. Tex. June 20, 2023) (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced

---

[4] *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court"). In contrast, maintaining the assets at the destination accounts is perhaps Mr. Cohn's only realistic chance at a future recovery in this case.

Finally, the Court finds that issuing the injunction is in the public interest. In fact, in this case, the public interest weighs particularly heavily in favor of the requested injunction. Mr. Cohn's evidence shows that the devastation wrought by the pig-butchering epidemic is breathtaking. Cole Decl., ¶¶ 21 – 23. The FBI estimates that in 2023 alone, pig-butchering scammers stole nearly $4 billion from *tens of thousands* of American victims. *Id*. CNN has noted that this is "theft at a scale so large that investigators are now calling it a mass transfer of wealth from middle-class Americans to criminal gangs." *Id*. Experienced prosecutors have reported that they "have never seen the absolute decimation of people that [they have] seen as a result of pig butchering." *Id*. The public interest overwhelmingly favors preserving victims' only potential source of recovery through the issuance of preliminary injunctive relief. As other courts have noted, issuing the relief requested will "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6. Foreign criminal gangs cannot be allowed to steal the life savings from tens of thousands of hardworking Americans with impunity.

The relief Mr. Cohn seeks in the instant Motion is justified in light of the emergence of additional evidence concerning a subset of the accounts frozen by the Court's prior injunction. *See* Fed. R. Civ. P. 60(b)(5); *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions[.]"); *Pro Edge L.P. v. Gue*, 411 F. Supp. 2d 1080, 1086–87 (N.D. Iowa 2006) (noting that a district court has the discretion to modify its decrees in light of "changed circumstances," and collecting cases). No evidentiary hearing is required considering Mr. Cohn's representation to the Court that the owners of the accounts as to which the asset freeze will be lifted support the relief he seeks, and thus that there is no material factual controversy at bar. *See Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993) ("[A] district court may issue a preliminary injunction without an evidentiary hearing when the facts are not disputed." (citation omitted)); *Linc-Drop, Inc. v. City of Lincoln*, 996 F. Supp. 2d 845, 849 n.2 (D. Neb. 2014) (noting that "[a]n evidentiary hearing is only required before issuing a preliminary injunction if there is a material factual controversy," and collecting cases).

### III. Preliminary Injunction

Plaintiff has submitted evidence tracing the assets he alleges were stolen from him to 11 deposit addresses at the cryptocurrency exchanges Binance, Zedxion, and OKX (the "Receiving Addresses"). The Receiving Addresses are:

| Exchange | Address |
| --- | --- |
| Binance | 16gWSWQ8nJ6QiiuCj8Ya9ADVZVD4LRRQyy |
| Binance | 1JYByGQYMHzRMSpha7f3bT6V2qv1NVkNVj |

| Binance | 0x8bf9538e6d36a20466b40d1e873b137e68dbf5f3 |
| --- | --- |
| Binance | 0x6d7c64808be889d12b97d812b6e54d9594c87a1c |
| Binance | 0x8bd3596bd1d0e4484ff29df420399b6e9197e3f4 |
| Zedxion | 17y7A2SUCZpjdKmdAJq2rD4Js6Z89jehgi |
| Zedxion | 1n9wzc4Bbb8vYvXugeFBfLsfqC5NC1WcN |
| OKX | 3NdBc2vgwxWt4jjUeoYshqibXPRD5NrL7C |
| OKX | 0xdA22870E0Bd87133250fbC319476E278D7af93c2 |
| OKX | 0x5041ed759Dd4aFc3a72b8192C143F72f4724081A |
| OKX | 0x5d8814d1268d70d89c2ee8cdf9e14ff64902fce6 |

For the reasons set out in Plaintiff's Motion for Preliminary Injunction [Dkt. 9] and Motion for Entry of Amended Preliminary Injunction [Dkt. 17], the Court finds that the accounts associated with these deposit addresses should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed Receiving Addresses, or any business entity through which they act or which acts in active concert

11

or participation with them; including but not limited to those assets currently held at or for the Receiving Addresses.

The Court **ORDERS** that Plaintiff shall cause a copy of this Order to be served on the above-listed entities in a manner compliant with Rule 4 or as the Court may further direct. Upon receiving a copy of this Order, these entities shall be restrained and enjoined from disturbing assets, directly or indirectly, to or on behalf of Defendants or any entities under Defendants' control. Additionally, the Court **ORDERS** that all movement, alteration, or destruction of books, records, and accounts related to the above-listed blockchain addresses is prohibited. The Court declines to impose a bond.  The Preliminary Injunction previously issued by the Court is hereby superseded. [Dkt. 15]. The injunctive relief set out in this Amended Preliminary Injunction shall continue until trial or further order of the Court.

**SIGNED this 16th day of October, 2024.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge