# FILED UNDER SEAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| Bruce Cohn, *Plaintiff,* v. Anna Popescu, *et al.*, *Defendants.* | Case No. 1:24-cv-00337 **Plaintiff's Second Motion for *Ex Parte* Temporary Restraining Order** |

Plaintiff Bruce Cohn hereby requests that the Court enter a temporary restraining order freezing the Defendants' assets. In support, Mr. Cohn respectfully shows the Court as follows.

## I.  Preliminary Statement

As the Court will be aware, this is a pig-butchering scam case. This Court granted Plaintiff's Motion for Expedited Discovery in an order dated August 18, 2024.[1] ███████████████████████████████████

████████████████████████████████████████████████████

---

[1] Dkt. 6.

[REDACTED]

## II. Supporting Materials

Mr. Cohn submits the following materials in support of this Motion.

*Exhibit 1: Cole Declaration.* Evan Cole is Plaintiff's investigator in this case. Mr. Cole's declaration attests to the locations to which the assets misappropriated from Mr. Cohn's were ultimately transferred. It also provides the blockchain tracing report as well as information and context as to how these addresses were located.

*Exhibit 2: Hoda Declaration.* Marshal Hoda is counsel to Mr. Cohn in this matter. Counsel's declaration attests to the reasons why the Court should not require notice before issuance of an *ex parte* temporary restraining order.

## III. Factual Allegations

This Court is familiar with the tracing methodology being used in this case as it was outlined in Plaintiff's First Motion For *Ex Parte* Temporary Restraining Order.[2] [REDACTED]

---

[2] Dkt. 2.

[3] Ex. 1, Cole Declaration (henceforth, "Cole Dec."), ¶ 4.



## IV. Relief Sought

Mr. Cohn seeks a temporary restraining order freezing the Defendants' addresses and the assets within them. The balance of this Motion will articulate the standards applicable to these requests and explain why Mr. Cohn has satisfied them.

### A. The Court should issue an *ex parte* Temporary Restraining Order freezing the Defendants' accounts ███████████

Mr. Cohn requests that the Court issue an *ex parte* temporary restraining order freezing the Defendants' accounts ███████████ The standard for issuance of such an order has both procedural and substantive aspects. This section will first explain why Mr. Cohn has satisfied

---

[4] *Id.* at ¶ 5

[5] *Id.* at ¶ 6

these requirements. It will then detail the Court's authority to issue an asset-freezing order in this case, and why it should indeed do so.

        *1.    Mr. Cohn has met the procedural requirements for issuance of an ex parte restraining order.*

The Court has the authority to issue an *ex parte* temporary restraining order without notice or a hearing if (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[6] Each of these requirements is met here.

*Element 1: Immediate & Irreparable Injury*. The Second Amended Complaint, the Cole Declaration, and the Hoda Declaration show the likelihood of immediate and irreparable injury or loss. These materials first establish that Mr. Cohn was victimized by Defendants in a pig-butchering scam.[7] The tactics on display here are a precise match for those that have been described in news reports, law-enforcement bulletins, and reported cases.[8] Any law-enforcement agent or investigator familiar with this area would conclude that Mr. Cohn was the victim of a pig-butchering scam

---

[6] FED R. CIV. P. 65(b)(1)(A)-(B).

[7] Plaintiff's Second Amended Complaint, Dkt. 31, ¶¶ 5, 17-35.

[8] *Id.*

immediately upon reviewing the evidence, just as Mr. Cohn's investigator has here.[9]

The risk of immediate and irreparable injury is posed by the fact that cybercriminals like the Defendants can and do move crypto assets from address to address in mere seconds, with the click of a button.[10] And while crypto assets held at exchange-based addresses can be frozen and involuntarily disgorged, most assets held in "self-custody" or at non-compliant exchanges cannot.[11] Thus, the tracing of Mr. Cohn's assets to the Destination Exchange's addresses provides a unique and fleeting opportunity to restrain further movement of those assets while Mr. Cohn identifies and serves the Defendants. Courts have repeatedly recognized that these features of blockchain technology justify the issuance of *ex parte* freezing orders in crypto-fraud cases.[12]

---

[9] Ex. 1, Cole Dec., ¶ 3.

[10] ECF No. 2, Ex. 1-C, Declaration of Evan Cole at ¶7.

[11] *Id.*

[12] *See, e.g.*, *Harris v. Upwintrade*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex.) (Truncale, J.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case and noting "[i]n light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that the [Plaintiffs'] request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts considering similar circumstances"); *Cohn v. Popescu*, 1:24-cv-00337-MJT, Dkt. 8 (E.D. Tex.) (Truncale, J.) (Aug. 30, 2024) (same); *Ohlin v. Defendant 1*, No. 3:23-cv-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid

*Element 2: Notice.* The Court has the authority to enter an *ex parte* order not only where notice to the adverse party is impracticable, but where "notice to the defendant would render fruitless [the] prosecution of the action."[13] Under this logic, courts have found that notice of an asset-freeze motion is not required if the parties to be enjoined "are likely to dissipate assets and destroy business documents," such that the very act of providing notice would "cause immediate and irreparable, injury, or damages to [the] Court's ability to award effective final relief."[14]

If the Defendants were provided notice of this Motion, it would be "a simple matter" for them to "transfer [the stolen cryptocurrency] to unidentified recipients outside the traditional banking system, including contacts in foreign countries, and effectively put it beyond the reach of this

---

dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

[13] *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified under this logic if applicant shows that "the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history").

[14] *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018).

court."[15] Numerous courts, including this Court, have applied just this logic in granting *ex parte* asset-freezing orders in crypto-fraud cases like this one.[16]

### 2. Mr. Cohn has met the substantive requirements for issuance of a temporary restraining order.

To obtain a temporary restraining order, the movant must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[17] Mr. Cohn has met each of these requisites for the reasons set out below.

---

[15] *Jacobo*, 2022 WL 2052637, at *3 (quoting *Dluca*, 2018 WL 1830800, at *2).

[16] *See, e.g.*, *Harris*, Case No. 1:24-cv-00313-MJT, Dkt. 7, at p. 7 (issuing TRO without notice in pig-butchering case where "the thrust of the [Plaintiffs'] allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority … [and they] have provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets if they were given notice of this motion"); *Gaponyuk v. Alferov*, No. 2:23-cv-01317, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

[17] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

*Element 1: The Merits.* Mr. Cohn alleges that the Defendants are liable for (1) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), (2) conversion, and (3) fraud. Mr. Cohn is likely to succeed on the merits of each of these claims.[18]

*RICO Claim.* To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to his business or property, and (3) that such injury was caused by the RICO violation.[19] To prove a RICO violation, a plaintiff must show that the defendant is (1) a person[20] who engaged in (2) a pattern[21] of racketeering activity,[22] (3) connected to the acquisition, establishment, conduct or control of an enterprise.[23]

---

[18] While venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3), Mr. Cohn is a resident of California. The Court should thus apply California law to Mr. Cohn's common-law conversion and fraud claims.

[19] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

[20] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[21] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[22] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[23] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

Mr. Cohn's RICO claim is likely to succeed. His Complaint makes non-conclusory allegations sufficient to establish each element, including by (1) identifying and defining the Defendants' enterprise,[24] (2) explaining their pattern of wire fraud,[25] and (3) recounting the injuries he suffered as a direct result of the Defendants' racketeering scheme.[26] The Complaint shows that the Defendants' scheme was the very definition of an enterprise created solely to perpetrate a pattern of wire fraud, and on a global scale.[27] At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[28]

*Conversion Claim*. To prevail on a conversion claim, a plaintiff must show "(1) she has a right to the property at issue; (2) she has an absolute and unconditional right to the immediate possession of that property; (3) the defendant wrongfully and without authorization assumed control, dominion,

---

[24] Second Amended Complaint, ¶¶ 17– 33.

[25] *Id*.

[26] *Id*.

[27] *Id*.

[28] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

or ownership over the property; and (4) she made a demand for the return of the property."[29]

Mr. Cohn's conversion claim is likely to succeed. His Complaint and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of Mr. Cohn's assets and have not returned them.[30] Numerous courts have found that plaintiffs were likely to succeed on conversion claims in in crypto-fraud cases.[31]

*Fraud Claim*. To prevail on a fraud claim, a claimant must prove: (1) the defendant misrepresented a material fact; (2) the defendant knew the representation was false; (3) the claimant did not know the representation was false; (4) the defendant made the misrepresentation intending that the claimant act on it; and (5) damages resulted from the claimant's reliance.[32]

Mr. Cohn's fraud claim is likely to succeed. His Complaint shows that that the Defendants intentionally and falsely represented that Mr. Cohn was

---

[29] *Weisberger v. Weisberger*, 2011 IL App (1st) 101557, ¶ 45, 954 N.E.2d 282, 289.

[30] Second Amended Complaint, ¶¶ 17– 33.

[31] *See, e.g.*, *Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

[32] *See Jett v. Zeman Homes, Inc.*, 2018 IL App (1st) 170690-U.

trading cryptocurrency on a legitimate platform with the intention of causing Mr. Cohn to transfer his assets to the Defendants' control, that these statements were material to him, and that he acted on the Defendants' misrepresentations to his detriment.[33]

*Element 2: Irreparable Harm*. This irreparable-harm requirement is satisfied for the same reasons explained in Section IV(A)(1), above. As noted there, courts have repeatedly found a risk of irreparable harm in crypto-scam cases like this one.[34]

*Element 3: Balancing*. The threatened injury to Mr. Cohn outweighs any damage a freezing order might cause to the Defendants. Mr. Cohn has lost a life-changing sum, and the order he seeks is his only hope of preserving some assets for recovery. And while an asset freeze might cause temporary inconvenience to the Defendants, any restraint implemented can be undone should future developments require.[35]

---

[33] Second Amended Complaint, ¶¶ 17 – 33.

[34] *See* n.55, *supra* (collecting cases).

[35] *See, e.g.*, *Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Gaponyuk*, 2023 WL 4670043, at *3 (same, finding "a short-term freeze is unlikely to present any great harms"); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

*Element 4: Public Interest.* A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans" like Mr. Cohn.[36] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[37] and "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[38]

        3.    *The Court has the authority to issue the asset-freezing injunction Mr. Cohn seeks.*

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff's claims have been brought to judgment.[39] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive

---

[36] *Licht*, 2023 WL 4504584, at *3.

[37] *Id.*

[38] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

[39] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

trust over traceable stolen assets.[40] Mr. Cohn seeks just such relief here.[41] For that reason, the Court has the authority to issue the asset-freezing injunction Mr. Cohn seeks.

### 4. The Court should not require a bond.

Rule 65(c) provides that a court issuing a preliminary injunction or TRO should do so "only if the movant give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[42] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all."[43] The Defendants will suffer any damages as a result of the requested asset freeze, which—as explained above—can be undone at any time if the Defendants choose to appear and challenge the injunction. Mr. Cohn thus requests that the Court decline to impose a bond.

---

[40] *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

[41] Second Amended Complaint, ¶ 76.

[42] FED. R. CIV. P. 65(c).

[43] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

## V. Conclusion

For the reasons set out above, Mr. Cohn has met the standards for issuance of a temporary restraining order in this matter. Mr. Cohn requests that the Court issue this relief in the form of the proposed order submitted with this Motion.

## CERTIFICATION FOR FILING UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), counsel for Plaintiff certifies that a motion to seal this document was filed on May 22, 2025.

Dated:  May 22, 2025                    Respectfully submitted,

                                        THE HODA LAW FIRM, PLLC

                                        /s/ M. Hoda

                                        Marshal J. Hoda, Esq.
                                        Tx. Bar No. 2411009
                                        Alexander J. Crous, Esq.
                                        Tx. Bar No. 24136488
                                        12333 Sowden Road, Suite B
                                        PMB 51811
                                        Houston, TX 77080
                                        o. (832) 848-0036
                                        marshal@thehodalawfirm.com

                                        *Attorneys for Plaintiff*