IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| BRUCE COHN, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| VS. | § |
| | §   CIVIL ACTION NO. 1:24-CV-00337 |
| ANNA POPESCU, | §   JUDGE MICHAEL J. TRUNCALE |
| TRUSTHFTWALLET.COM, | § |
| ZEDXION EXCHANGE LTD, | § |
| ELIZABETH NEWMAN, and | § |
| JOHN DOES 1 – 20, | § |
| | § |
| *Defendants*. | § |

## ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR *EX PARTE* TEMPORARY RESTRAINING ORDER

Plaintiff Bruce Cohn has filed a Second Motion for *Ex Parte* Temporary Restraining Order (the "Motion"), in which he seeks an order requiring the freezing of the target addresses identified through discovery and subsequent investigation. [Dkts. 32, 37].[1] The Court has reviewed Plaintiff's Motion and finds that, for the reasons set out therein, he faces a risk of irreparable harm if the requested relief does not issue and notice to the Defendants should not be required. Accordingly, Plaintiff's Motion is hereby **GRANTED**.

## I.    BACKGROUND

Plaintiff's relevant allegations are as follows. In June 2024, he met a person claiming to be named Anna Popescu on a dating website. [Dkt. 31 at ¶ 17].  The two began messaging regularly. *Id*. She eventually told him about her success investing and trading cryptocurrencies and introduced him to a platform called TrustHFTwallet. *Id.* at ¶ 18. Popescu said she knew how to make profits using

---

[1] Plaintiff filed his original Second Motion for *Ex Parte* Temporary Restraining Order under seal. [Dkt. 32]. Pursuant to this Court's Order [Dkt. 34], Plaintiff filed the same motion with certain confidential material redacted. [Dkt. 37]. This Order is substantively the same as its Sealed Order [Dkt. 35], but it redacts the confidential information.

TrustHFTwallet and offered to teach Mr. Cohn how to do the same. *Id.* She encouraged him to make a TrustHFTwallet account, which he soon did. *Id.*

Over the next several months, Popescu "trained" Mr. Cohn in cryptocurrency trading using the TrustHFTwallet platform. *Id.* at ¶ 19. When Mr. Cohn was ready to make a deposit on TrustHFTwallet, the platform provided him asset-transfer instructions via the platform's customer-service chat or on its "deposit" page. *Id.* Mr. Cohn completed the transactions as instructed. *Id.* Each time he deposited assets, the cryptocurrencies he transferred were reflected in his transaction history and account balance on the TrustHFTwallet platform. *Id.* Over time, he sent assets to TrustHFTwallet with a dollar-denominated value of over $2,400,000.00. *Id.*

Mr. Cohn's balance on the TrustHFTwallet platform appeared to grow rapidly—eventually showing that he had crypto assets worth more than $4.5 million in his account. *Id.* at ¶ 20. But when he attempted to withdraw his assets, TrustHFTwallet informed him that him that he could not do so in significant quantities without "leveling up" his account by depositing more money. *Id.* Mr. Cohn began to believe he had been scammed. *Id.*

Mr. Cohn now alleges that TrustHFTwallet's explanations as to why he could not withdraw his funds were lies. *Id.* at ¶ 21. He says the real reason TrustHFTwallet would not return his assets is that TrustHFTwallet is not a real trading platform at all. *Id.* Instead, he alleges that he has been the victim of what is known as a "pig-butchering scam." *Id.* at ¶¶ 3–4. According to Mr. Cohn, this is a type of investment scam in which the perpetrators deceive victims into depositing their assets on a fake-but-realistic-looking "trading" or "investment" platform, where no trading or investment ever occurs. *Id.* Instead, Mr. Cohn alleges, the assets are simply stolen. *Id.* at ¶ 21.

Mr. Cohn previously submitted evidentiary materials suggesting that these kinds of investment scams are now amongst the most prevalent forms of cybercrime worldwide. [Dkt. 2-1]. This is echoed in the additional Declaration submitted by Mr. Cohn in support of the instant Motion, in which Mr. Cohn's investigator avers that the additional evidence produced since the Court's prior order has

reinforced the conclusion that Mr. Cohn was the victim of a pig-butchering scam here. [Dkt. 32-1 at ¶ 3].

As part of his investigation into the scam, the Court authorized Mr. Cohn to issue subpoenas to several entities believed to possess information about the scam's perpetrators, ███████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████

██  ████████████████████████████████████

██  ████████████████████████████████

██  ████████████████████████████████

██  ████████████████████████████████

██  ████████████████████████████████

██  ████████████████████████████████

██ The cryptocurrency held at these addresses is called U.S. Dollar Coin ("USDC"). *Id.* at ¶ 6. Mr. Cohn alleges that Circle Internet Group, Inc. ("Circle")—the organization that created and manages the USDC currency—has the ability to blacklist blockchain addresses holding USDC and thereby effectively "freeze" the USDC at those addresses. *Id.* at ¶¶ 7–8. Mr. Cohn seeks to have the Court order just such a freeze in the instant Motion.

## II.    ANALYSIS

Mr. Cohn has met the requirements for issuance of a temporary restraining order for the following reasons.

### A.  Procedural Requirements

The standard for issuance of an *ex parte* temporary restraining order has both procedural and substantive elements. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(A)–(B).

Both requirements are met here. Mr. Cohn's Complaint, the Cole Declaration, and the blockchain-tracing report show the likelihood of immediate and irreparable injury or loss. These materials suggest that Mr. Cohn was in fact the victim of a prevalent form of cybercrime—the "pig-butchering scam"—which features well-established and recognizable patterns of deception. *See* [Dkt. 31 at ¶¶ 17–35]; [Dkt. 32-1 at ¶ 3]. Several federal courts, including this Court, have issued *ex parte* restraining orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[2]

In addition, Mr. Cohn's attorney has certified why notice should not be required. *See* [Dkt. 2-2 at 6–7; Dkt. 32-2 (Declaration by Attorney Marshal Hoda)]. As Mr. Cohn points out in his Motion,

---

[2] *See, e.g.*, *Harris v. Upwintrade.com*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex. Aug. 8, 2024) (Truncale, J.) (granting TRO in functionally identical pig-butchering case); *Cohn v. Popescu*, No. 1:24-cv-00337, 2024 WL 4525511 (E.D. Tex. Aug. 16, 2024) (Truncale J.) (same); *Ohlin v. Defendant 1*, No. 3:23cv8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DAD-BAK (BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

the Court has the authority to enter an *ex parte* order not only where notice to the adverse party is impracticable, but where "notice to the defendant would render fruitless [the] prosecution of the action." *In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). Under this logic, courts have found that notice of an asset-freeze motion is not required if the parties to be enjoined "are likely to dissipate assets and destroy business documents," such that the very act of providing notice would "cause immediate and irreparable injury, loss, or damage to [the] Court's ability to award effective final relief." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Several courts have found that this same reasoning justified issuance of *ex parte* freezing orders in crypto-fraud cases analogous to this one.[3]

Here, the thrust of Mr. Cohn's allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority. *See generally* [Dkts. 31, 32]. While at this stage these are simply allegations, Mr. Cohn has provided sufficient evidence to suggest that the Defendants will in fact further dissipate assets if they were given notice of his Motion. This is sufficient to justify issuance of an *ex parte* order under these unique circumstances.

---

[3] *See, e.g.*, *Gaponyuk v. Alferov*, No. 2:23:CV-01317-KJM-JDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable."); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

**B.  Substantive Requirements**

Having found that the procedural requirements for issuance of an *ex parte* restraining order are met, the Court now turns to the substantive standard. To obtain a temporary restraining order, a movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (per curiam) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

Mr. Cohn has met each of these requirements. On the merits, Mr. Cohn makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), conversion, aiding and abetting conversion, fraud, and aiding and abetting fraud. [Dkt. 31 at ¶¶ 36–74]. He has alleged and provided evidence that the Defendants deceived him and misappropriated his assets in what appears to have been an intentional scam. *Id.* at ¶¶ 17–35; [Dkt. 32-1 at ¶ 3]. The Court finds, at this stage, that the similarities between Plaintiff's allegations and the widely known characteristics of this distinctive kind of scam suggest that he will indeed be able to prevail on these claims once a full evidentiary record is developed. In addition, the Court notes that the asset freeze Mr. Cohn seeks in this instance is permissible in light of his request for a constructive trust over specific, traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts . . . have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

Mr. Cohn has also shown that irreparable harm will ensue absent the restraining order he seeks, for the same reasons explained above. In light of the speed with which cryptocurrency transactions

are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that Mr. Cohn's request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts in similar cases. *See Jacobo*, 2022 WL 2052637, at *3, 5.

Next, the Court finds that the threatened injury to Mr. Cohn outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. Maintaining the assets at the destination accounts is perhaps Mr. Cohn's only realistic chance at a future recovery in this case. In contrast, the Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See id.* at *6 ("A delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court.").

Finally, the Court finds that issuing the injunction is in the public interest. Mr. Cohn has adduced evidence showing that he is but one of many victims of what appears to be a wave of similar scams. [Dkt. 2-1 at ¶¶ 3–5 (Cole Declaration describing pig-butchering scams as "epidemic" and providing law-enforcement and academic materials suggesting that Americans have lost billions to such scams)]; *see also* [Dkt. 32-1]. A freezing order will serve the public interest here both by dissuading would-be fraudsters from preying on American citizens, and "providing assurance to the public that courts will take action to promote . . . recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6 (cleaned up) (citation omitted); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

### III.    RELIEF REQUESTED

Plaintiff has submitted evidence purporting to show that some of his assets were deposited at six ▮▮▮▮▮ Target Addresses. The Target Addresses are:



For the reasons set out in the Motion, the Court finds that the Target Addresses should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed target addresses, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Target Addresses.

In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiff.

**SIGNED this 29th day of May, 2025.**

_Michael J. Truncale_
Michael J. Truncale
United States District Judge