# FILED UNDER SEAL

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| Bruce Cohn, | |
| *Plaintiff,* | Case No. 1:24-CV-00337 |
| v. | |
| Anna Popescu, *et al.*, | **Plaintiff's Second Motion for Preliminary Injunction** |
| *Defendants.* | |

Plaintiff Bruce Cohn hereby requests that the Court enter a preliminary injunction extending the relief granted in the extant Temporary Restraining Order. In support, he respectfully shows the Court as follows.

## I.   Preliminary Statement

The Defendants are foreign cybercriminals who stole from Mr. Cohn in a pig-butchering scam. On May 23, 2025, the Court entered a Temporary Restraining Order freezing the Defendants' assets. Since that time, for the reasons set out below, the evidence that the Defendants are in fact pig-butchering scammers has only grown stronger. Mr. Cohn respectfully requests that the Court issue a preliminary injunction extending the asset freeze through trial.

## II. Factual Allegations

Mr. Cohn's Second Amended Complaint and his motion for the extant TRO detail his relevant allegations against the Defendants.[1] In addition, Mr. Cohn submitted voluminous evidence in support of his first Motion for Preliminary Injunction earlier in this case.[2] Mr. Cohn relies on that evidence here. This Motion will avoid repetition, insofar as possible, by focusing on the later-acquired evidence that gave rise to the instant request.

### A. The Scam

The Defendants are a syndicate of foreign cybercriminals who stole $2,466,000.00 from Mr. Cohn in a pig-butchering scam.[3] The Cole Declaration explains why there is no doubt that the Defendants are, in fact, pig-butchering scammers.[4] It does so by comparing Mr. Cohn's allegations and evidence to the paradigm that emerges from the most comprehensive academic study of the pig-butchering epidemic to date, and by providing the FBI's most recent cybercrime report showing that pig-butchering scams like the one at issue here are epidemic.[5]

---

[1] Dkt. 36, Second Amended Complaint ("SAC"); Dkt. 37, Second Motion for Temporary Restraining Order.

[2] Dkt. 9, Motion for Preliminary Injunction.

[3] SAC, ¶¶ 17 – 35.

[4] Ex. 1, Declaration of Evan Cole ("Cole Declaration"), ¶¶ 3 – 5.

[5] *Id.*

### B. Blockchain Tracing

At the outset of this case, Mr. Cohn's investigator determined that a portion of Mr. Cohn's assets were funneled by the scammers to a deposit address at the cryptocurrency exchange Binance (the "Binance Receiving Account").[6] The Court subsequently authorized Mr. Cohn to issue a subpoena to Binance seeking information about the Binance Receiving Account, which he did.[7] In response, Binance produced documents identifying the individual owner of the Binance Receiving Account: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓ is a participant in the criminal syndicate that victimized Mr. Cohn.[9] His role was to receive the assets stolen from Mr. Cohn after they had been "hopped" through a few intermediary addresses, and then transfer those assets onward to additional addresses controlled by the Defendants.[10]

Binance's production also provided ▓▓▓▓ transaction history. Mr. Cohn's investigator used that information to trace outgoing transactions from ▓▓▓▓ account. The blockchain analysis shows that ▓▓▓▓ received Mr. Cohn's assets in the form of United States Dollar Token ("USDT") and, less than an hour later, "swapped" that USDT for a different crypto asset called

---

[6] Cole Declaration, ¶ 10.

[7] Dkt. 6, Order Granting Emergency Motion for *Ex Parte* Temporary Restraining Order and Authorizing Expedited Discovery.

[8] Ex. 1-D, Binance Production, *passim*.

[9] Cole Declaration, ¶¶ 11 – 12.

[10] *Id.*

United States Dollar Coin ("USDC"). ▮▮▮ subsequently made transfers of USDC to each to the six blockchain addresses that are the targets of this Motion (the "Target Addresses").[11] The Target Addresses are, therefore, the ultimate recipients of assets traceable to Mr. Cohn. Today, the Target Addresses collectively hold USDC valued at approximately $4.9 million.[12] The Target Addresses are:



Mr. Cohn sought a temporary restraining order requiring that the Target Addresses be frozen by Circle Internet Group, Inc. ("Circle"), the organization that manages the USDC token.[13] The Court issued a TRO to this effect,[14] and subsequently extended it by fourteen days.[15] Upon being served

---

[11] *Id.*, ¶¶ 11 – 12. Each of the Target Addresses is now an *in rem* defendant in this matter.

[12] *Id.*

[13] Dkt. 37, Second Motion for Temporary Restraining Order.

[14] Dkt. 38, Order Granting Plaintiff's Second Motion for Temporary Restraining Order.

[15] Dkt. 40, Order Granting Motion to Extend Temporary Restraining Order.

with the Court's Order, Circle "blacklisted" the Target Addresses.[16] This has the effect of freezing the assets held at those addresses in place. Each of the Target Addresses remains blacklisted as of the date of this Motion.

### III.   Relief Sought

Mr. Cohn seeks a preliminary injunction ordering that the Target Addresses remain frozen through trial. The balance of this Motion will explain why Mr. Cohn has satisfied the applicable requirements.

> *1.   Mr. Cohn provided the Defendants notice of the injunction hearing and this Motion.*

Under the Federal Rules, "the court may issue a preliminary injunction only on notice to the adverse party."[17] This rule "does not require service of process, but rather requires notice to the adverse party."[18] As the Eleventh Circuit recently noted, "there is a reason Rule 65 allows emergency injunctive relief before service of process."[19] Holding that a preliminary injunction could not issue "before service of process on a defendant abroad would mean that plaintiffs could not obtain initial relief from impending or ongoing harm …

---

[16] Cole Declaration, ¶ 13.

[17] FED R. CIV. P. 65(a)(1).

[18] *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 542 (5th Cir. 2023) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978)).

[19] *Sec. & Exch. Comm'n v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281, at *2 (11th Cir. Apr. 8, 2024).

for months or even years as the Hague Convention service or alternative service process unfolded."[20]

Mr. Cohn's investigator provided notice of the upcoming preliminary-injunction hearing to the Defendants on June 18, 2025. He did so by (i) sending this Motion and a link to the public docket to the email address that ▮▮▮▮▮▮ provided to Binance and (ii) by transferring Non-Fungible Tokens ("NFTs") containing links to the Motion documents and the public docket to each of the Target Addresses.[21]

> 2. *Mr. Cohn has met the substantive requirements for issuance of a preliminary injunction.*

To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[22] Mr. Cohn has met these requirements for the reasons set out below.

*Element 1: The Merits*. Mr. Cohn alleges that the Defendants are liable for (1) violations of the Racketeering Influenced and Corrupt Organizations

---

[20] *Id.*

[21] Cole Declaration, ¶¶ 15 – 17.

[22] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

Act ("RICO"), (2) conversion, and (3) fraud. Mr. Cohn is likely to succeed on the merits of each of these claims.[23]

*RICO Claim*. To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to his business or property, and (3) that such injury was caused by the RICO violation.[24] To prove a RICO violation, a plaintiff must show that the defendant is (1) a person[25] who engaged in (2) a pattern[26] of racketeering activity,[27] (3) connected to the acquisition, establishment, conduct or control of an enterprise.[28]

Mr. Cohn's RICO claim is likely to succeed. His Complaint makes non-conclusory allegations sufficient to establish each element, including by (1)

---

[23] While venue is proper in this Court pursuant to 28 U.S.C. § 1391(c)(3), Mr. Cohn is a resident of California. The Court should thus apply California law to Mr. Cohn's common-law conversion and fraud claims.

[24] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

[25] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[26] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[27] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[28] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

identifying and defining the Defendants' enterprise,[29] (2) explaining their pattern of wire fraud,[30] and (3) recounting the injuries he suffered as a direct result of the Defendants' racketeering scheme.[31] The Complaint shows that the Defendants' scheme was the very definition of an enterprise created solely to perpetrate a pattern of wire fraud, and on a global scale.[32] At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[33]

*Conversion Claim.* To prevail on a conversion claim, a plaintiff must show "(1) [their] ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages."[34] Mr. Cohn's conversion claim is likely to succeed. His Complaint and the Cole Declaration show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of

---

[29] Second Amended Complaint, ¶¶ 17– 33.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

[34] *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (Cal. Ct. App. 2014).

Mr. Cohn's assets and have not returned them.[35] Numerous courts have found that plaintiffs were likely to succeed on conversion claims in in crypto-fraud cases.[36]

*Fraud Claim.* To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to his or her damage.[37]

Mr. Cohn's fraud claim is likely to succeed. His Complaint shows that the Defendants intentionally and falsely represented that Mr. Cohn was trading cryptocurrency on a legitimate platform with the intention of causing Mr. Cohn to transfer his assets to the Defendants' control, that these statements were material to him, and that he acted on the Defendants' misrepresentations to his detriment.[38]

---

[35] Second Amended Complaint, ¶¶ 17– 33.

[36] *See, e.g.*, *Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

[37] *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191 (2011), as modified (Aug. 24, 2011).

[38] Second Amended Complaint, ¶¶ 17 – 33.

*Element 2: Irreparable Harm*. Dissolution of the extant asset freeze would cause irreparable harm. Cybercriminals like the Defendants can and do move crypto assets from address to address in mere seconds, with the click of a button.[39] And while courts can order the freezing and disgorgement of crypto assets held at exchange-based addresses, most assets held in "self-custody" or at non-compliant exchanges are beyond the effective reach of such orders.[40] The tracing of Mr. Cohn's assets to their present location provides a unique and fleeting opportunity to restrain further dissipation while Mr. Cohn moves this case toward resolution. Courts have consistently recognized that these features of blockchain technology justify the issuance of freezing orders in crypto-fraud cases.[41]

*Element 3: Balancing*. The threatened injury to Mr. Cohn outweighs any damage a freezing order might cause to the Defendants. Mr. Cohn has

---

[39] Cole Declaration, ¶ 14 (explaining the risk of irreparable harm in cryptocurrency-related fraud cases).

[40] *Id*.

[41] *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

lost millions, and the order he seeks is his only hope of preserving some assets for recovery. And while an asset freeze might cause temporary inconvenience to the restrained persons, any restraint implemented can be undone should future developments require.[42] In addition, as detailed above, the Defendants have received notice of this proceeding.[43] If they so choose, they are free to contest the issuance of the injunction at the upcoming hearing or to seek to have the injunction dissolved at any point before final judgment.

*Element 4: Public Interest.* A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans" like Mr. Cohn.[44] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[45] and "provide[] assurance to the public that courts will take action

---

[42] *See, e.g.*, *Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

[43] Cole Declaration, ¶¶ 15 – 17.

[44] *Licht*, 2023 WL 4504584, at *3.

[45] *Id.*

to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[46]

In this case, the public interest weighs particularly heavily in favor of the requested injunction. As detailed in the Cole Declaration, the devastation wrought by the pig-butchering epidemic is breathtaking. The FBI reports that in 2024 alone, pig-butchering scammers stole more than $5 billion from *tens of thousands* of American victims.[47] The public interest overwhelmingly favors preserving victims' only potential source of recovery through the issuance of preliminary injunctive relief.

> 3. *The Court has the authority to issue the asset-freezing injunction Mr. Cohn seeks.*

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff has brought his claims to judgment.[48] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive

---

[46] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

[47] Cole Declaration, ¶ 6 (describing pig-butchering epidemic and attaching FBI report).

[48] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

trust over traceable stolen assets.[49] Mr. Cohn seeks just such relief here.[50] For that reason, the Court has the authority to issue the asset-freezing injunction Mr. Cohn seeks.

    4.  *The Court should not require a bond.*

Rule 65(c) provides that a court issuing a preliminary injunction should do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[51] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all."[52] The Defendants will not suffer any damages due to the requested asset freeze, which—as explained above—can be undone at any time if the Defendants choose to appear and challenge the injunction. Mr. Cohn thus requests that the Court decline to impose a bond.

---

[49] *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

[50] Dkt. 36, ¶ 76.

[51] FED. R. CIV. P. 65(c).

[52] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

### IV.     Conclusion

For the reasons set out above, Mr. Cohn has met the standards for issuance of a preliminary injunction. Accordingly, he requests that the Court issue grant relief in substantially the form of the proposed order submitted with this Motion.

**<u>CERTIFICATION FOR FILING UNDER SEAL</u>**

Pursuant to Local Rule CV-5(a)(7), counsel for Plaintiff certifies that a motion to seal this document was filed on June 18, 2025.

Dated:  June 18, 2025 Respectfully submitted,

THE HODA LAW FIRM, PLLC

Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
Alexander Crous, Esq.
Tx. Bar No. 24136488
3120 Southwest Fwy
Ste 101, PMB 51811
Houston, TX 77080
marshal@thehodalawfirm.com
alex@thehodalawfirm.com
o. (832) 848-0036

*Attorneys for Plaintiff*