UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| Bruce Cohn, § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| VS. § | | |
| § | CASE NO. 1:24-CV-00337 | |
| Anna Popescu, *et al.*, § | | |
| § | | |
| *Defendants*. § | | |
| § | | |
| § | | |

## ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR PRELIMINARY RESTRAINING ORDER

Before the Court is Plaintiff's Second Motion for Preliminary Restraining Order (the "Motion"). On May 23, 2025, the Court granted Plaintiff's request for a 14-day TRO freezing six blockchain addresses that he alleges received assets that were stolen from him by the defendants in this matter. Dkt. 34. The Court subsequently extended that TRO for another 14 days. Dkt. 40. Plaintiff now seeks to extend this asset freeze through trial.

The Court has reviewed Plaintiff's Motion and evidentiary materials. For the reasons set out below, Plaintiff's Motion is hereby **GRANTED**.

### I. Background

Plaintiff's relevant allegations are as follows. In June 2024, he met a person claiming to be named Anna Popescu on a dating website. Dkt. 36, ¶ 17. Popescu eventually told Plaintiff about her success investing and trading cryptocurrencies and introduced him to a platform called TrustHFTwallet.

*Id.* at ¶ 18. Popescu told Plaintiff that she knew how to make profits using TrustHFTwallet and offered to teach him how to do the same. *Id.* She encouraged him to make a TrustHFTwallet account, which he soon did. *Id.*

Over the next several months, Popescu 'trained' Plaintiff in cryptocurrency trading using the TrustHFTwallet platform. *Id.* at ¶ 19. When Plaintiff was ready to make a deposit on TrustHFTwallet, the platform provided him asset-transfer instructions via its mobile application. *Id.* Plaintiff completed the transactions as instructed. *Id.* Each time, the amount of funds he 'deposited' would then be reflected in his transaction history and account balance on the TrustHFTwallet platform. *Id.* Over time, he sent assets to TrustHFTwallet with a dollar-denominated value of more than $2,400,000.00. *Id.*

Plaintiff's balance on the TrustHFTwallet platform appeared to grow rapidly—eventually showing that he had crypto assets worth more than $5 million in his account. *Id.* at ¶ 20. But when he attempted to withdraw his funds, TrustHFTwallet informed him that him that he could not do so in significant quantities without 'leveling up' his account by depositing more money. *Id.* Plaintiff realized that he had been scammed. *Id.*

At the outset of this case, Plaintiff's investigator produced a "blockchain tracing" report. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. Cole Decl., Ex. 1-D (blockchain tracing graph). Plaintiff's investigator

was able to trace his allegedly stolen assets to a deposit address associated with the Binance cryptocurrency exchange. The Court therefore authorized Plaintiff to issue a subpoena to Binance. Dkt. 6. In response, Binance produced documents identifying the individual owner of the Binance Receiving Account: ███████████████ Cole Decl., Ex. 1-D.

Plaintiff alleges that ███ is a participant in the criminal syndicate that victimized him. Specifically, he alleges that ███ role was to receive the assets stolen from Plaintiff after they had been "hopped" through intermediary addresses, and then transfer those assets onward to additional addresses controlled by the Defendants. By analyzing ███ outgoing transaction history, Plaintiff alleges that he was able to trace his assets to six blockchain addresses where they were ultimately deposited, and where they remain to this day (the "Target Addresses"). *Id*. The Target Addresses are:



The cryptocurrency held at these addresses is called U.S. Dollar Coin ("USDC"). Plaintiff alleges that Circle Internet Group, Inc. ("Circle")—the organization that created and manages the USDC currency—has the ability

- 3 -

to blacklist blockchain addresses holding USDC and thereby effectively "freeze" the USDC at those addresses. *Id.*, ¶¶ 13 – 14.

Plaintiff reports that Circle has in fact implemented a freeze of these addresses in response to the Court's prior TRO. He now seeks a preliminary injunction that would extend the Court's freezing order through trial. Plaintiff has provided evidence showing that he provided the Defendants notice of the preliminary injunction hearing via the email address used to operate their Binance account and via NFT transfer to each of the USDC deposit addresses. Cole Decl., ¶¶ 15 – 17.

**II.    Analysis**

Plaintiff has met the requirements for issuance of a Preliminary Injunction for the following reasons.

First, Plaintiff has shown that the Defendants had notice of his Motion and this hearing as required under Federal Rule of Civil Procedure 65(a)(1). The Cole Declaration describes the methods used to provide notice to the Defendants here. Cole Decl., ¶¶ 15 – 17.

Next, Plaintiff has met the substantive requisites for issuance of a preliminary injunction. To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore*

*v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017). Each of these requisites is addressed in turn below.

Plaintiff makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. He has alleged and provided evidence that the Defendants deceived him and misappropriated his assets in what appears to have been an intentional scam. SAC, ¶¶ 17 – 35; Cole Decl., ¶¶ 3 – 14. The Court finds, at this stage, that the similarities between Plaintiff's allegations and the widely known characteristics of this distinctive kind of scam suggest that he will indeed be able to prevail on these claims once a full evidentiary record is developed.

In addition, as in the previous order granting the extant TRO, the Court notes that asset freeze Plaintiff seeks in this instance is permissible in light of his request for a constructive trust over specific, traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same). Plaintiff's claim that his assets can be traced to their present

locations is supported by the blockchain analysis submitted in support of his Motion. Cole Decl., ¶¶ 12 – 14.

Plaintiff has also shown that irreparable harm will ensue absent the restraining order he seeks. The assets at issue could be further transferred to unretrievable locations at any time, with the click of a button. Cole Decl., ¶ 14. Several federal courts have found that this exigency justified issuance of freezing orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[1]

Next, the Court finds that the threatened injury to Plaintiff outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. The Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See, e.g.*, *Licht v. Ling*, No. 3:23-CV-1018, 2023 WL 4504585, at *3 (N.D. Tex. June 20, 2023) (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6

---

[1] *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

(same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court"). In contrast, maintaining the assets at the destination accounts is perhaps Plaintiff's only realistic chance at recovery in this case.

Finally, the Court finds that issuing the injunction is in the public interest. In fact, in this case, the public interest weighs particularly heavily in favor of the requested injunction. Plaintiff's evidence shows that the devastation wrought by the pig-butchering epidemic is breathtaking. Cole Decl., ¶¶ 6 – 9. The FBI reports that in 2024 alone, tens of thousands of American victims lost more than $5 billion to cryptocurrency-related investment scams. *Id*. The public interest overwhelmingly favors preserving victims' only potential source of recovery through the issuance of preliminary injunctive relief. As other courts have noted, issuing the relief requested will "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6.

### III. Preliminary Injunction

Plaintiff has submitted evidence tracing the assets he alleges were stolen from him the Target Addresses, which are:

███████████████████████████████

███████████████████████████████



For the reasons set out in the Motion, the Court finds that these deposit addresses should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed Target Addresses, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Target Addresses.

The Court **ORDERS** that Plaintiff shall cause a copy of this Order to be served on the above-listed entities in a manner compliant with Rule 4 or as the Court may further direct. Upon receiving a copy of this Order, these entities shall be restrained and enjoined from disturbing assets, directly or indirectly, to or on behalf of Defendants or any entities under Defendants'

control. Additionally, the Court **ORDERS** that all movement, alteration, or destruction of books, records, and accounts related to the above-listed blockchain addresses is prohibited. The Court declines to impose a bond.

The preliminary injunction set out in this Order shall continue until trial or further order of the Court.

Dated:  June 18, 2025

Prepared By:

THE HODA LAW FIRM, PLLC

/s/ M. Hoda

---

Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
Alexander Crous, Esq.
Tx. Bar No. 24136488
3120 Southwest Fwy
Ste 101, PMB 51811
Houston, TX 77080
marshal@thehodalawfirm.com
alex@thehodalawfirm.com
o. (832) 848-0036

*Attorneys for Plaintiff*