**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| Bruce Cohn,<br><br>        *Plaintiff,*<br><br>    v.<br><br>Anna Popescu, et al.,<br><br>        *Defendants.* | Civil Action No. 1:24-cv-00337-MJT |

**DEFENDANT JOHN DOE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

**PILLSBURY WINTHROP SHAW
PITTMAN LLP**

David Oliwenstein
Max A. Winograd
Andrew Wiktor
31 West 52nd Street
New York, New York 10019-6131
Tel.: (212) 858-1000
Fax.: (212) 858-1500

William D. Wood
609 Main Street
Suite 2000
Houston, Texas 77002
Tel.: (713) 276-7600
Fax.: (713) 276-7673

*Attorneys for Defendant John Doe*

# TABLE OF CONTENTS

**Page**

Preliminary Statement .................................................................................................... 1

Argument ...................................................................................................................... 3

I.   Plaintiff's Allegation that Mr. Sun Received Crypto Assets Does Not Give Rise to
     Any Cause of Action ........................................................................................... 3

A.   Plaintiff's Sole Allegation Is Inadequate Under Both *Iqbal* and Rule 9(b) ................. 3

B.   Plaintiff Has Not Alleged a RICO Claim Against Mr. Sun .......................................... 4

   i.   Plaintiff Fails to Allege a Pattern of Racketeering Activity .................................... 4

   ii.  Plaintiff Fails to Allege Mr. Sun's Participation in a RICO Enterprise.................. 6

C.   Plaintiff's Remaining State Law Claims Are Inadequately Pled ................................ 7

II.  There Is No Basis to Assert Personal Jurisdiction Over Mr. Sun ...................................... 8

A.   Plaintiff's Failure to Plead a RICO Claim Against Mr. Sun Precludes the
     Exercise of Jurisdiction Over Him .................................................................... 8

B.   Plaintiff Cannot Rely on RICO's Nationwide Service of Process Provision to
     Assert Jurisdiction Over Mr. Sun ...................................................................... 9

C.   Plaintiff's Assertion of Jurisdiction Under Rule 4(k)(2) Also Fails ........................... 10

D.   The Court Should Decline Plaintiff's Invitation to Invent a Novel Theory of
     Jurisdiction ................................................................................................ 11

III. Plaintiff Should Not Be Permitted to File a Fifth Complaint or Conduct
     Jurisdictional Discovery ...................................................................................... 13

A.   The Court Should Not Grant Leave to Further Amend .............................................. 13

B.   There Is No Basis for Jurisdictional Discovery ...................................................... 15

Conclusion .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................1, 3, 4, 6

*Busch v. Buchman, Buchman & O'Brien, Law Firm*,
11 F.3d 1255 (5th Cir. 1994) ...........................................................................9

*CGC Holding Co. v. Hutchens*,
974 F.3d 1201 (10th Cir. 2020) .......................................................................9

*D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*,
98 F.4th 198 (5th Cir.), *cert. denied*, 145 S. Ct. 264 (2024).............................4, 6

*D&T Partners v. Baymark Partners LP*,
No. 21-CV-1171-B, 2022 WL 13829913 (N.D. Tex. Oct. 21, 2022).............................5

*Davis-Lynch, Inc. v. Moreno*,
667 F.3d 539 (5th Cir. 2012) ...........................................................................6

*Don't Look Media LLC v. Fly Victor Ltd.*,
999 F.3d 1284 (11th Cir. 2021) .......................................................................9

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
46 F.4th 226 (5th Cir. 2022) ...........................................................................10

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025).............................................................................................12

*Gardner v. Gary Sinise Foundation*,
No. 23-CV-99, 2024 WL 477516 (E.D. Tex. Feb. 7, 2024)....................................13

*Hafez v. Vidino*,
No. 24-00873, 2025 WL 2800719 (D.D.C. Sept. 30, 2025)....................................9

*Henry v. Lehman Com. Paper, Inc. (In re First Alliance Mortg. Co.)*,
471 F.3d 977 (9th Cir. 2006) ...........................................................................7, 8

*Hernandez v. Vanderbilt Mortg. & Fin., Inc.*,
No. C-10-67, 2010 WL 1875796 (S.D. Tex. May 6, 2010)....................................9

*Importers Serv. Corp. v. Aliotta*,
No. 22CV4640 (EP) (JBC), 2024 WL 2765620 (D.N.J. May 30, 2024)................10

*Johnson v. TheHuffingtonPost.com, Inc.*,
    21 F.4th 314 (5th Cir. 2021) ................................................................15

*Meany v. Atomic Protocol Systems OU*,
    No. 23-cv-01582, 2024 WL 4135762 (D. Colo. Sept. 10, 2024)............................11

*Menzies v. Seyfarth Shaw LLP*,
    943 F.3d 328 (7th Cir. 2019) ..................................................................6

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) .................................................................11

*Morgan v. Bank of Waukegan*,
    804 F.2d 970 (7th Cir. 1986) ..................................................................6

*Oblio Telecom, Inc. v. Patel*,
    711 F. Supp. 2d 668 (N.D. Tex. 2008) .......................................................9

*Pearson v. Shriners Hosps. for Child., Inc.*,
    133 F.4th 433 (5th Cir. 2025), *cert. denied*, No. 25-204, 2025 WL 2949580 (Oct. 20,
    2025) ...........................................................................................12

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997) .................................................................9

*Rogers v. McDorman*,
    521 F.3d 381 (5th Cir. 2008) ..................................................................7

*Rolls-Royce Corp. v. Heros, Inc.*,
    576 F. Supp. 2d 765 (N.D. Tex. 2008) .......................................................9

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) .............................................................14, 15

*Rush v. Savchuk*,
    444 U.S. 320 (1980).............................................................................12

*Schlaifer Nance & Co. v. Est. of Warhol*,
    119 F.3d 91 (2d Cir. 1997)......................................................................5

*St. Germain v. Howard*,
    556 F.3d 261 (5th Cir. 2009) ..................................................................4

*Stevens v. St. Tammany Parish Gov't*,
    17 F.4th 563 (5th Cir. 2021) ..............................................................14, 15

*Stueve Bros. Farms, LLC v. Berger Kahn*,
    222 Cal. App. 4th 303 (Cal. Ct. App. 2013) ..................................................7

*Superclinics USA, Inc. v. JPMorgan Chase Bank, N.A.*,
  23-cv-00699, 2023 WL 5007873 (C.D. Cal. Aug. 4, 2023) ..................................................7

*U.S. Textiles, Inc. v. Anheuser-Busch Cos.*,
  911 F.2d 1261 (7th Cir. 1990) ........................................................................................5

*United States ex rel. Colquitt v. Abbott Lab'ys*,
  858 F.3d 365 (5th Cir. 2017) ..........................................................................................4

*United States v. Charles*,
  469 F.3d 402 (5th Cir. 2006) ..........................................................................................4

*United States v. Turkette*,
  452 U.S. 576 (1981) ........................................................................................................4

*Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*,
  No. 17-5134, 2017 WL 6055167 (E.D. La. Dec. 7, 2017) ...............................................6, 7

<u>Statutes and Codes</u>

United States Code
  Title 18, Section 1965(a)..................................................................................................8
  Title 18, Section 1965(b) ...............................................................................................8, 9
  Title 28, Section 1391(c)(3)............................................................................................13

<u>Rules and Regulations</u>

Federal Rules of Civil Procedure
  Rule 4(k)(1)(A) ..................................................................................................................9
  Rule 4(k)(2)...............................................................................................8, 10, 11, 12
  Rule 9(b) .............................................................................................................1, 3, 4, 6, 8
  Rule 15(a).........................................................................................................2, 13, 14

Defendant John Doe, Wei-Ning Sun, respectfully submits this reply memorandum of law in support of his November 10, 2025 motion to dismiss Plaintiff's Third Amended Complaint (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff claims that Defendant Anna Popescu duped him out of $2.4 million in crypto assets. As against Mr. Sun, Plaintiff alleges that, after eight transactions among various parties, Plaintiff's assets were in Mr. Sun's crypto wallets at the time the asset freeze went into effect. But this one allegation—that Mr. Sun received crypto assets—is insufficient to stave off dismissal.

Recognizing that this paltry allegation (singular) does not give rise to any claim for relief or provide any basis for the exercise of jurisdiction over Mr. Sun, Plaintiff argues that he alleges "far more" than receipt of funds. Not so. No matter how Plaintiff tries to dress it up, alleging that (1) Mr. Sun owns blockchain addresses; (2) proceeds were sent to those addresses; and (3) Mr. Sun's wallets were the "terminal repository" for funds are simply different ways of repeating the same allegation—that Mr. Sun received crypto assets. But the mere receipt of assets—whether USDC or otherwise—is insufficient to establish that a Defendant participated in a RICO enterprise or aided and abetted a fraud, and Plaintiff identifies no authority to the contrary.

Plaintiff somehow argues that, based on these "allegations" (supposedly plural), he has plausibly alleged under *Iqbal* that Mr. Sun is a racketeer, fraudster, and thief. But Plaintiff does not argue that he has satisfied the requirements of Rule 9(b), nor does he dispute that the Rule's heightened pleading standard applies to each of his claims. Tellingly, the term "9(b)" appears nowhere in his Opposition. But Rule 9(b)'s requirements are not mere suggestions, and Plaintiff's failure to plead with specificity mandates dismissal of all claims against Mr. Sun.

This failure also renders the exercise of jurisdiction over Mr. Sun improper. In his Opposition, Plaintiff advances three supposed bases for personal jurisdiction, each of which is

premised on properly pled RICO claims against Mr. Sun.  In the absence of that claim, Plaintiff must satisfy the jurisdictional prerequisite that applies to the vast majority of federal civil litigation—he must allege and prove that Mr. Sun has minimum contacts with Texas.  But the question of whether Plaintiff must demonstrate that Mr. Sun has minimum contacts with Texas or minimum contacts with the United States, or satisfy some lesser standard under Plaintiff's "novel" theory, is ultimately of no moment because Plaintiff has not alleged *any* contacts between Mr. Sun and this forum.  His claims against Mr. Sun must be dismissed for lack of jurisdiction.

Recognizing these defects, and after filing four complaints to date and forcing Mr. Sun to expend considerable resources to clear his name while his assets remain frozen, Plaintiff asks for two more bites at the apple.  First, Plaintiff implores the Court to give him a further opportunity to amend his complaint by adding 20 pages of additional allegations that Plaintiff represents he has at the ready.  Plaintiff offers no reason why any motion to amend his pleading could not have been made before the parties engaged in costly motion practice, and he fails to explain how these new allegations will cure his defective Third Amended Complaint.  On this record, allowing Plaintiff to file a fifth pleading is inconsistent with Rule 15(a).

Second, Plaintiff seeks jurisdictional discovery, but that is not appropriate here because there is no genuine dispute between the parties regarding jurisdictional facts, and Plaintiff has not proffered any relevant facts that discovery could confirm.  The use of jurisdictional discovery as a Hail Mary attempt to avoid dismissal finds no support in the law.

We respectfully request that the Third Amended Complaint against Mr. Sun be dismissed with prejudice.

## ARGUMENT

I.    **Plaintiff's Allegation that Mr. Sun Received Crypto**
      **Assets Does Not Give Rise to Any Cause of Action**

Plaintiff's Third Amended Complaint asserts six claims against Mr. Sun.  Not one is adequately pled under *Iqbal* or Rule 9(b).  Plaintiff concedes as much with respect to his fraud and conversion claims, both of which he abandons in a footnote to his opposition brief.  But the allegation that Mr. Sun received crypto assets does not make any of Plaintiff's remaining claims plausible; nor does it provide *any* of the information required under the applicable heightened pleading standard.

Each claim suffers from further defects.  Plaintiff's RICO claims fail because Plaintiff does not allege Mr. Sun's participation in a RICO enterprise, and the one course of conduct described in the Third Amended Complaint does not constitute a pattern.  And while Plaintiff recognizes that his aiding-and-abetting claims require that he allege both knowledge and substantial assistance, there are no allegations that plead either element in accordance with either *Iqbal* or Rule 9(b).

A.    **Plaintiff's Sole Allegation Is Inadequate Under Both *Iqbal* and Rule 9(b)**

The Third Amended Complaint's sole allegation against Mr. Sun is that he received crypto assets.  Upon that basis alone, Plaintiff seeks to hold Mr. Sun liable as a RICO participant and conspirator, fraudster, and thief.  But mere receipt of assets does not give rise to any of those claims.

Plaintiff recognizes that.  <u>First</u>, buried in footnote 97 of his opposition, Plaintiff voluntarily dismisses his fraud and conversion claims.  Opp. at 25.  <u>Second</u>, Plaintiff attempts to recast his allegation that Mr. Sun received crypto assets into several discrete allegations—namely, that Mr. Sun "intentionally laundered the proceeds of an industrial-scale fraud"; that Mr. Sun "admits that he is the owner of the nearly $5 million in USDC held at the frozen addresses"; that Mr. Sun's role was "the laundering endpoint of a fraud"; and that Mr. Sun's "[crypto] addresses were the

3

designated destination for the laundered funds." *Id.* at 13, 14, 15, 20, 21, 23.

But these are all different ways of pleading the same allegation:  Mr. Sun received crypto assets.  Compl. ¶ 10.  Plaintiff argues that, based on this one allegation, he has plausibly pled, as to Mr. Sun, a RICO violation, a RICO conspiracy violation, and two aiding-and-abetting claims under *Iqbal*.  On those points, Plaintiff is wrong.  But Plaintiff does not argue that this one allegation—or any of his claims against Mr. Sun—satisfies Rule 9(b).[1]  Nor can he.  There is no credible argument that alleging that a defendant received crypto assets satisfies the "require[ment], at a minimum, that a plaintiff plead the 'who, what, when, where, and how' of the alleged fraud," *United States ex rel. Colquitt v. Abbott Lab'ys*, 858 F.3d 365, 371 (5th Cir. 2017) (citation omitted).  This alone requires dismissal as to Mr. Sun.

### B.    Plaintiff Has Not Alleged a RICO Claim Against Mr. Sun

Plaintiff's RICO claims are deficient because he has failed to allege a pattern of racketeering activity or Mr. Sun's participation in a RICO enterprise.  Each failure is fatal to Plaintiff's claims.

### i.    Plaintiff Fails to Allege a Pattern of Racketeering Activity

To plead a pattern under RICO, a plaintiff must allege: (1) multiple predicate acts and (2) continuity.  *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009).  The Third Amended Complaint does neither, and Plaintiff's argument that the one fraud described in his pleading constitutes a pattern runs contrary to decades of RICO jurisprudence.  *See, e.g.*, *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 207 (5th Cir.), *cert. denied*, 145 S. Ct. 264 (2024) ("Courts are reluctant to find a RICO violation when the complaint alleges the unlawful conduct in pursuit of a 'single effort, over a finite period of time.'") (citation omitted); *United*

---

[1]  Plaintiff's failure to respond to Mr. Sun's arguments regarding the applicability of Rule 9(b) constitutes a waiver. *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned.").

*States v. Turkette*, 452 U.S. 576, 583 (1981).

Perhaps in recognition of that reality, Plaintiff attempts to salvage his RICO claims in three ways, each of which has been repeatedly rejected.

First, Plaintiff invites the Court to tally up the individual text messages and wire transfers between Plaintiff and Defendant Popescu, and, apparently, treat each item as a separate predicate act. *See* Opp. 23-24. This approach, which would transform virtually every wire fraud into a potential RICO violation, is not the law. *D&T Partners v. Baymark Partners LP*, No. 21-CV-1171-B, 2022 WL 13829913, at *6 (N.D. Tex. Oct. 21, 2022); *U.S. Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1268 (7th Cir. 1990) ("Virtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' by purpose and spread over a period of at least several months. Where such a fraudulent scheme inflicts or threatens only a single injury, we continue to doubt that Congress intended" for RICO to apply.).

Second, Plaintiff asks that the Court bifurcate the alleged wire fraud from the alleged laundering of the fraudulent proceeds and treat each as a separate predicate act. Here, too, Plaintiff's approach has been repeatedly rejected. *See* Motion to Dismiss (ECF No. 85) ("Mot."). at 13 & n.7. It is easy to see why. Consider, for example, how many "single endeavor" white collar offenses are followed by an attempt to conceal the illicit proceeds. And consider, for example, how many singular violations of law are followed by either a false statement to law enforcement, destruction of evidence, or other obstructive conduct. Plaintiff's theory would sweep all of this conduct under the ambit of RICO. Not surprisingly, this is also not the law. *See Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997); Mot. at 13 & n.7 (citing cases).

Third, Plaintiff makes vague and conclusory references to "other victims," including an assertion that, "on information and belief, the vast majority" of deposits "were funds stolen from

[other] pig-butchering victims." Compl. ¶¶ 29, 37. This is the functional equivalent of pleading "on information and belief, I hereby allege a pattern." Both *Iqbal* and Rule 9(b) require more. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 341 (7th Cir. 2019) ("RICO's pattern element requires more than a plaintiff pointing to others and saying, on information and belief, that those persons received mailings about an allegedly fraudulent loan scheme. The plaintiff needed to come forward, not with general statements about what others may have received, but with particular allegations detailing the content of the communications with others allegedly defrauded by the defendant's conduct.").

At bottom, the Third Amended Complaint describes "a single effort to facilitate a single financial endeavor." *D&T Partners, L.L.C*, 98 F.4th at 207. For this reason, in addition to failing to allege the requisite two predicate acts, Plaintiff likewise fails to allege continuity, which requires "predicate acts occurring at different points in time or involving different victims." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). This, too, is fatal to Plaintiff's RICO claims. *Id.* ("'[A] single scheme to accomplish 'one discrete goal,' directed at one individual with no potential to extend to other persons or entities' is not the type of racketeering 'pattern' RICO seeks to prohibit.").

ii.    Plaintiff Fails to Allege Mr. Sun's Participation in a RICO Enterprise

Plaintiff's allegation that Mr. Sun received crypto assets "without more, does not show that [he] actually operated the scheme to obtain those funds or materials." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 551-52 (5th Cir. 2012); *see also Wang v. Ochsner Med. Ctr.-Kenner, L.L.C.*, No. 17-5134, 2017 WL 6055167, at *11 (E.D. La. Dec. 7, 2017) ("Financially benefiting from another's conduct or scheme is not sufficient to show that one actually operated the scheme to defraud."). Because "federal RICO violations, as a matter of law, require affirmative wrongdoing rather than passive acquiescence," Plaintiff's RICO claims against Mr. Sun must be dismissed.

*See Rogers v. McDorman*, 521 F.3d 381, 389 (5th Cir. 2008).

#### C.    Plaintiff's Remaining State Law Claims Are Inadequately Pled

Although Plaintiff apparently recognizes that he sued Mr. Sun for fraud and conversion without any basis (*see* Opp. at 25 n.97 (abandoning those claims)), Plaintiff continues to press his aiding and abetting claims. Those claims are equally defective and must also be dismissed.

Plaintiff concedes, as he must, that to state a claim for aiding and abetting, he must allege that Mr. Sun "provided substantial assistance or encouragement to the primary wrongdoer." *Id.* at 25. Plaintiff must also allege Mr. Sun's knowledge of the underlying tort. *Superclinics USA, Inc. v. JPMorgan Chase Bank, N.A.*, 23-cv-00699, 2023 WL 5007873, at *3 (C.D. Cal. Aug. 4, 2023). Here, Plaintiff alleges neither.

As with his RICO claims, Plaintiff's secondary liability claims against Mr. Sun hinge on the sole allegation against him—that Mr. Sun received crypto assets. Plaintiff effectively concedes that Mr. Sun's receipt of assets forms the basis of his secondary liability claims when Plaintiff argues that courts "routinely sustain such claims where the defendant's assistance consists of receiving, holding, moving or concealing stolen funds." *Id.* at 26. But the two cases upon which Plaintiff relies to establish this "routine" actually support the opposite proposition—i.e., that mere receipt of proceeds is insufficient. In *Stueve Bros.* (Opp. at 25, n.98), defendant actively participated in the relevant conduct by, for example, "advis[ing] the [victims] not to disclose information about the estate plan to outsiders," and by "further defraud[ing] the [victims] of thousands of dollars or more via a series of transactions effectuated through a 12-to 17-step plan." *Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 311 (Cal. Ct. App. 2013). Likewise, in *In re First Alliance Mortg. Co.* (Opp. at 26, n.99), defendant "satisfied all of [the principal tortfeasor's] financing needs and, after other investment banks stopped doing business with [them], kept [them] in business, knowing that its financial difficulties stemmed directly and

indirectly from litigation over its dubious lending practices." *Henry v. Lehman Com. Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977, 995 (9th Cir. 2006).

These cases contain the precise types of specific allegations of fact that suggest a defendant substantially assisted and had knowledge of a scheme. There are no such allegations as to Mr. Sun. Plaintiff's state law claims flunk both *Iqbal*'s plausibility requirement and Rule 9(b)'s heightened pleading standard, and they must be dismissed.

## II.      There Is No Basis to Assert Personal Jurisdiction Over Mr. Sun

Plaintiff purports to advance three bases for the exercise of jurisdiction over Mr. Sun: (1) RICO's nationwide service of process provision; (2) Rule 4(k)(2); and (3) a "novel," "more flexible" theory based on Defendant Popescu's contacts. Each basis fails, and the Court should dismiss the Third Amended Complaint against Mr. Sun for lack of personal jurisdiction.

### A.      Plaintiff's Failure to Plead a RICO Claim Against Mr. Sun Precludes the Exercise of Jurisdiction Over Him

All of Plaintiff's purported bases to assert personal jurisdiction over Mr. Sun fail for the same threshold reason: Plaintiff has failed to state a RICO claim against him. *See supra* § I.B.

By its plain language, RICO's nationwide service-of-process provision requires the existence of a RICO claim. *See* 18 U.S.C. §§ 1965(a), (b). Likewise, Rule 4(k)(2) only grants courts jurisdiction "[f]or claim[s] that arise[] under federal law." *See* Fed. R. Civ. P. 4(k)(2). And Plaintiff's "novel" theory is apparently cabined to claims that arise "under RICO." *See* Opp. at 16. Because Plaintiff has failed to state a RICO claim against Mr. Sun (*see supra* § I.B), none of Plaintiff's three jurisdictional bases support the exercise of jurisdiction.

In the absence of a RICO claim, Plaintiff must demonstrate that Mr. Sun has minimum

contacts with Texas under Rule 4(k)(1)(A).  As Plaintiff now appears to concede, he cannot.[2]

**B.     Plaintiff Cannot Rely on RICO's Nationwide Service of Process Provision to Assert Jurisdiction Over Mr. Sun**

Plaintiff's attempt to invoke jurisdiction based on RICO's nationwide service of process provision suffers from a further defect—namely, Mr. Sun was not served in the United States.  It is well-settled that RICO's nationwide service provision only informs the jurisdictional analysis when a defendant is "served in any judicial district of the United States, not abroad."  *Hafez v. Vidino*, No. 24-00873, 2025 WL 2800719, at *3 (D.D.C. Sept. 30, 2025) (internal quotation marks omitted) (quoting § 1965(b) and collecting cases); *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1293 (11th Cir. 2021) (same).

Mr. Sun was served via email to his Taiwanese counsel, a resident in Taipei, Taiwan.  *See* ECF No. 76 (order authorizing alternative service).  Rather than contend with this record, Plaintiff appears to brush aside the statutory requirement that RICO's jurisdictional provision only applies if a defendant is served within the United States.  *See* Opp. at 10, 11-12.  But the principal case upon which Plaintiff relies to assert that RICO's nationwide service provision "permits jurisdiction over foreign defendants," Opp. at 12, actually *affirmed the district court's dismissal* with respect to foreign defendants on jurisdictional grounds.  *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997).  And none of the additional cases cited by Plaintiff involve the exercise of jurisdiction under RICO over a defendant residing abroad.[3]

---

[2]   In his Third Amended Complaint, Plaintiff asserted that the Court has jurisdiction over Mr. Sun because he "direct[s] business activities towards and conducts business with consumers . . . within the State of Texas."  Compl. ¶ 13.  Plaintiff now disavows that allegation entirely, arguing only that jurisdiction lies because of Mr. Sun's "sufficient contacts with the United States *as a whole*."  Opp. at 10-11.

[3]   *See Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (domestic defendant); *CGC Holding Co. v. Hutchens*, 974 F.3d 1201, 1209-13 (10th Cir. 2020) (Canadian defendant subject to personal jurisdiction under Rule 4(k)(2), not RICO); *Hernandez v. Vanderbilt Mortg. & Fin., Inc.*, No. C-10-67, 2010 WL 1875796 (S.D. Tex. May 6, 2010) (domestic defendant); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (domestic defendant); *Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 675 (N.D. Tex. 2008) (domestic defendant).

As is evident by the plain language of RICO, which cabins its jurisdictional grant to defendants "served in any judicial district of the United States," and the authority cited by both Mr. Sun and Plaintiff, RICO's nationwide service provision provides no basis for jurisdiction.

### C.    Plaintiff's Assertion of Jurisdiction Under Rule 4(k)(2) Also Fails

Under Rule 4(k)(2), a court may assert personal jurisdiction over a foreign defendant if: (1) plaintiff's claims arise under federal law; (2) the defendant is not subject to jurisdiction in any individual state; and (3) exercising jurisdiction is consistent with the Constitution and the law.  *See Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 233 (5th Cir. 2022) (*en banc*).  Because Plaintiff has not adequately pled a claim against Mr. Sun that arises under federal law, Rule 4(k)(2) does not provide a basis for jurisdiction.  *See supra* § I.B.

Plaintiff's reliance on Rule 4(k)(2) is also misplaced because the exercise of jurisdiction here is not consistent with the Constitution or the law.  Plaintiff frames the relevant constitutional inquiry as "whether Sun purposefully directed conduct at the United States as a whole."  Opp. at 15.  But because the Third Amended Complaint does not describe any "conduct" by Mr. Sun at all, Plaintiff fails the standard he proposes.

In arguing otherwise, Plaintiff points to Mr. Sun's "admitted ownership of millions in U.S.-issued USDC, his alleged receipt of assets stolen from a U.S. victim, and his alleged role as the laundering endpoint of a fraud aimed squarely at U.S. citizens."  *Id*. at 15.  Of course, these three supposed "reasons" are different ways of saying the same thing:  Mr. Sun received crypto assets. This allegation is of no jurisdictional significance.  *See Importers Serv. Corp. v. Aliotta*, No. 22CV4640 (EP) (JBC), 2024 WL 2765620, at *7 (D.N.J. May 30, 2024) ("[T]he mere receipt of funds by a foreign entity is insufficient to confer personal jurisdiction over that entity.").

Plaintiff's attempt to base jurisdiction on Mr. Sun's receipt of funds is particularly unpersuasive given that Plaintiff alleges eight intermediate "hops" or "transfers" before Mr. Sun

received the assets. Opp. at 8. Perhaps in light of the results of this "tracing analysis," Plaintiff does not even allege that Mr. Sun had any reason to believe the assets he received were once owned by a "U.S. victim." *See* Compl. ¶ 29. Plaintiff is unable to cite any authority to argue that Mr. Sun's receipt of crypto assets suffices to confer jurisdiction, because there is none.

Plaintiff seems to argue for an exception to that rule because "USDC is a U.S.-created" and "U.S. managed" digital asset. Opp. at 14. That exception does not exist. Ownership of a crypto asset cannot confer jurisdiction on so little; otherwise, receipt of U.S. dollars in a checking account would be enough to confer jurisdiction over any person anywhere in the world. *See Meany v. Atomic Protocol Systems OU*, No. 23-cv-01582, 2024 WL 4135762, at *4-5 (D. Colo. Sept. 10, 2024) (dismissing claims involving allegedly stolen crypto assets for lack of personal jurisdiction).

Perhaps in recognition of the fact that he cannot show any contacts between Mr. Sun and the United States, Plaintiff instead argues that jurisdiction under Rule 4(k)(2) is proper based on *Plaintiff*'s contacts. Opp. at 15. But another party's "unilateral activities cannot establish minimum contacts between the defendant and forum state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Put another way, jurisdiction cannot be "based only on the fortuity that one of the parties happens to reside in the forum state." *Id*. at 312.

Neither Plaintiff's residence in California nor Mr. Sun's receipt of crypto assets that once allegedly belonged to Plaintiff provide sufficient contacts between Mr. Sun and the United States. Rule 4(k)(2), therefore, is not a basis for the exercise of jurisdiction.

### D.    The Court Should Decline Plaintiff's Invitation to Invent a Novel Theory of Jurisdiction

In light of the myriad defects in his jurisdictional arguments, Plaintiff asks the Court to embrace his self-proclaimed "novel theory" that in "international cyber-scam cases, under RICO, the nationwide contacts of the *entire syndicate* may be imputed to each member for jurisdictional

11

purposes." Opp. at 16 (emphasis in original). Plaintiff's argument is breathtaking in scope. In essence, Plaintiff asks the Court to ignore decades of precedent that prohibits parties from relying on group pleading to demonstrate the propriety of the exercise of jurisdiction. *See, e.g.*, *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025), *cert. denied*, No. 25-204, 2025 WL 2949580 (Oct. 20, 2025); *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980).

*Fuld* provides no support for Plaintiff's sweeping theory. In *Fuld*, the Supreme Court held that Congress's enactment of a statute, the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"), was constitutional insofar as it provided that the two entities named in the statute (the Palestine Liberation Organization and the Palestinian Authority) could be subject to a federal court's jurisdiction for claims brought under the Anti-Terrorism Act "in two specified circumstances." *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 8 (2025). As part of its holding, the Court stated that "the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id*. at 16.

*Fuld* has little bearing on this case. While Plaintiff describes *Fuld* as recognizing "that federal courts must be able to reach foreign actors who injure Americans from abroad," Opp. at 17, it was *Congress* that "made a considered judgment to subject the PLO and PA to liability in U.S. courts"—not the courts. *Fuld*, 606 U.S. at 19. Plaintiff may believe that RICO should be amended to grant courts jurisdiction over "international cyber-scam cases." Opp. at 16. But that is a decision for the legislature. *Fuld*, 606 U.S. at 19.

Because neither the RICO statute nor Rule 4(k)(2) provides a basis for jurisdiction, and because Plaintiff's novel theory finds no support in the law, the Third Amended Complaint against

Mr. Sun should be dismissed for lack of jurisdiction.[4]

### III. Plaintiff Should Not Be Permitted to File a Fifth Complaint or Conduct Jurisdictional Discovery

Facing the prospect of dismissal after filing four defective complaints, Plaintiff asks the Court for two additional bites at the apple in the form of "alternative relief." Opp. at 27-29. His request to file a fifth complaint is both too little (because there is no basis to believe his proposed additions will cure his defective pleading) and too late (because Plaintiff sat on this information while Mr. Sun expended considerable resources to litigate the current pleading). And the Fifth Circuit does not authorize a plaintiff to pursue jurisdictional discovery absent a specific basis to believe that such discovery is warranted. Plaintiff's requests for alternative relief should be denied.

### A. The Court Should Not Grant Leave to Further Amend

In recognition of the jurisdictional and substantive defects in the Third Amended Complaint, Plaintiff dangles before the Court "twenty or more pages of detailed allegations" that he could add to a *fifth* complaint against Mr. Sun, if only given the opportunity to do so. Opp. at 28-29. This, according to Plaintiff, would cure any "deficienc[ies]" (of which Plaintiff insists there are none) in the current, operative *fourth* complaint. Opp. at 28-29.

This is not how Rule 15(a) works. To state the obvious, Plaintiff was required to have a good-faith basis to support each factual allegation, each legal theory, and the inclusion of each Defendant at the time Plaintiff filed his *first* complaint. Plaintiff now concedes that he lacked such a basis for two of his claims against Mr. Sun. *See* Opp. at 25, n.97. Similarly, Plaintiff now abandons his allegation that Mr. Sun "direct[s] business activities towards and conduct[s] business

---

[4] Venue is also improper in the Eastern District of Texas. Although Plaintiff argues that venue is proper under § 1391(c)(3) because Mr. Sun "and his co-defendants are foreign nationals," Opp. at 18, that provision only applies where a plaintiff meets his burden of demonstrating that all defendants are foreign nationals. *See Gardner v. Gary Sinise Foundation*, No. 23-CV-99, 2024 WL 477516, at *3 (E.D. Tex. Feb. 7, 2024). As Plaintiff concedes, while Defendant Popescu "claims to be a citizen of Romania," her "whereabouts are unknown." Compl. ¶ 6.

with consumers . . . within the State of Texas." *Compare* Compl. ¶ 13; *with* Opp. at 10-11. This about-face, of course, came after Mr. Sun expended resources to demonstrate the insufficiency of Plaintiff's allegations.

Rather than bear the burden of satisfying his pleading obligations at the time he filed his first four complaints, Plaintiff instead asks the Court to adopt a unique construction of Rule 15(a) in "pig butchering scam cases" that apparently allows for potentially unlimited amendments. Opp. at 28. Plaintiff cites no authority for this proposition, and Mr. Sun is aware of none. To the contrary, courts routinely prohibit additional amendments where a plaintiff has failed to cure defects through multiple, prior amendments. *See Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 575 (5th Cir. 2021).

The case for denying leaving to amend is particularly compelling here because Plaintiff apparently kept his "twenty or more pages of detailed allegations" confined to his files while forcing Mr. Sun to litigate against a patently defective complaint. In the month leading up to his deadline to respond to the Third Amended Complaint, Mr. Sun repeatedly informed Plaintiff that Mr. Sun did not consent to personal jurisdiction. *See* Oliwenstein Decl. ¶¶ 4-6. And prior to filing his Motion, Mr. Sun *explicitly* informed Plaintiff, in writing, that he intended to move to dismiss the Third Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim. *Id.* at ¶ 7. To the extent Plaintiff's additional 20 pages would have addressed those defects, that was the time to do so. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) ("Plaintiffs admit they deliberately chose to delay amending their complaint . . . [and] concede they have not raised facts which were not available previous to the district court's opinion. In this regard, plaintiffs did not exercise diligence." (internal citation omitted)).

Because Plaintiff has not demonstrated that the allegations that he seeks to include in a

proposed fourth amended complaint could not have, with reasonable diligence, been pled in any of his prior four complaints, the Court should not grant Plaintiff a fifth bite at the apple. His request for leave to amend should be denied. *Id.*; *Stevens*, 17 F.4th at 575.

**B.  There Is No Basis for Jurisdictional Discovery**

Plaintiff's request for jurisdictional discovery should also be denied. A plaintiff is not entitled to such discovery as a matter of course. To the contrary, a plaintiff must demonstrate that it is "likely to produce the facts needed to withstand dismissal" and "make clear which 'specific facts' he expects to find." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (upholding denial of discovery). Plaintiff's desire "to verify Sun's identity, his location, or the extent of his business activities and financial ties to the United States or U.S. financial infrastructure" does not meet that standard. Opp. at 27-28.

This is not a case in which the parties disagree on the relevant jurisdictional facts. Plaintiff has alleged facts—namely, the existence of a U.S. victim and Mr. Sun's receipt of USDC assets— and argues that those facts are a sufficient jurisdictional predicate. Mr. Sun accepts those allegations as true for purposes of this Motion, but argues that they are patently insufficient. Thus, the dispute between the parties is legal, not factual. And the Fifth Circuit has recognized that jurisdictional discovery is improper where a plaintiff's "allegations … cannot sustain [a court's] power as a matter of law." *Johnson* at 326. That is precisely the case here. The Court should reject Plaintiff's request for "a jurisdictional fishing expedition" and deny his application. *Id.*

## CONCLUSION

We respectfully request that the Court dismiss Plaintiff's claims against Mr. Sun with prejudice and without leave to amend.

15

Dated: December 23, 2025

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: _/s/ David Oliwenstein_
    David Oliwenstein
    Max A. Winograd
    Andrew Wiktor
    31 West 52nd Street
    New York, New York 10019-6131
    Tel.: (212) 858-1000
    Fax.: (212) 858-1500
    david.oliwenstein@pillsburylaw.com
    max.winograd@pillsburylaw.com
    andrew.wiktor@pillsburylaw.com

    William D. Wood
    609 Main Street
    Suite 2000
    Houston, Texas 77002
    Tel.: (713) 276-7600
    Fax.: (713) 276-7673
    william.wood@pillsburylaw.com

    _Attorneys for Defendant John Doe_

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a)(3). As such, this document was served on all parties appearing in the above-captioned case who have consented to electronic service via the Court's CM/ECF system on December 23, 2025.


By: */s/ David Oliwenstein*
      David Oliwenstein