# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| Bruce Cohn, | |
| *Plaintiff,* | Case No. 1:24-cv-00337 |
| v. | |
| Anna Popescu, *et al.*, | **Plaintiff's Supplemental Brief regarding *Fuld v. Palestinian Liberation Organization*** |
| *Defendants.* | |

Plaintiff Bruce Cohn hereby submits this Supplemental Brief in response to the Court's Order requiring additional briefing on how lower courts have interpreted *Fuld v. Palestine Liberation Organization*,[1] and the bearing of that interpretation on the pending motion to dismiss. In support, Plaintiff respectfully shows the Court as follows.

## I. Introduction

In *Fuld v. Palestine Liberation Organization*, the Supreme Court clarified the constitutional framework governing personal jurisdiction in federal-question cases. Rejecting the importation of the Fourteenth Amendment's state-focused "minimum contacts" doctrine into the Fifth

---

[1] 606 U.S. 1 (2025).

Amendment, the Court held that federal courts exercising jurisdiction pursuant to federal statutes are not constrained by the interstate federalism concerns that animate *International Shoe* and its progeny. Instead, for claims arising under federal statues, the Fifth Amendment permits a more flexible inquiry commensurate with the Federal Government's broader sovereign authority—particularly where jurisdiction is tied to conduct bearing a meaningful relationship to the national interest in providing its citizens redress from harms inflicted by bad actors abroad.

*Fuld*'s watershed holding fundamentally alters the landscape governing personal jurisdiction in federal statutory cases, including civil RICO actions like this one. Lower courts applying *Fuld* have recognized that the constitutional analysis in such cases is national—not state-specific—and that Rule 4(k)(2) properly aggregates a defendant's contacts with the United States as a whole. They have further acknowledged that, at most, the Fifth Amendment imposes a limited reasonableness backstop, one that is readily satisfied where federal interests are substantial and the defendant's conduct is meaningfully connected to the United States.

This case falls squarely within that framework. Plaintiff brings a federal civil RICO action arising from a transnational "pig-butchering" cryptocurrency fraud scheme that targeted and injured a United States citizen. Defendant Wei-Ning Sun has emerged to claim ownership of millions of dollars in digital assets that this Court has already found sufficient to

freeze based on their connection to that scheme. The enterprise's conduct was directed at the United States; the injury occurred in the United States; and the statutory cause of action arises under federal law providing for nationwide service of process. Under *Fuld* and the consistent post-*Fuld* decisions of the lower courts, the exercise of personal jurisdiction here comports with the Fifth Amendment.

## II. *Fuld* Holds that the Fourteenth Amendment Framework Does Not Control Under the Fifth Amendment.

In *Fuld*, the Supreme Court addressed, for the first time, whether the Fourteenth Amendment's "minimum contacts" framework governs personal jurisdiction in cases arising under federal law and evaluated under the Fifth Amendment's Due Process Clause. The Court held that it does not.[2]

The Court began by observing that modern personal-jurisdiction doctrine derives from *International Shoe Co. v. Washington*[3] and its progeny—cases that interpret the Fourteenth Amendment's Due Process Clause and govern the jurisdictional limits of state courts.[4] Those decisions, the Court explained, are animated not only by fairness concerns but by principles of interstate federalism—ensuring that one State does not overreach into the sovereign sphere of another.[5] Those interstate federalism

---

[2] *Id.* at 18.

[3] 326 U.S. 310 (1945).

[4] *Fuld*, 606 U.S. at 18.

[5] *Id.*

concerns "do not apply," the Court explained, when a federal court exercises jurisdiction pursuant to the Fifth Amendment.[6] The Constitution creates no coequal-sovereign relationship between the United States and foreign nations analogous to the relationship among the States.[7] Because the Federal Government possesses nationwide and extraterritorial sovereign authority, the Court declined to "import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment."[8] In short, *Fuld* makes clear that state-focused minimum-contacts doctrine does not constrain federal courts adjudicating federal claims.[9]

Having rejected importation of Fourteenth Amendment doctrine, the Court emphasized that the Fifth Amendment permits "a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority."[10] While the Court declined to delineate the outer limits of federal adjudicative power, it upheld Congress's exercise of jurisdiction where the statute "ties federal jurisdiction to conduct closely related to the United States that implicates important foreign policy concerns."[11] Thus, the constitutional question is not whether a foreign defendant has sufficient

---

[6] *Id*. at 16 – 18.

[7] *Id*. at 14 – 15.

[8] *Id*. at 16.

[9] *Id*., *passim*.

[10] *Id*. at 16.

[11] *Id*. at 18.

contacts with a particular State, but whether the exercise of federal jurisdiction is grounded in conduct meaningfully connected to the United States and consistent with the Federal Government's sovereign authority.[12]

### III. Post-*Fuld* Decisions Confirm That Federal Courts Apply a National Nexus Inquiry Under Rule 4(k)(2), Subject Only to a Flexible Reasonableness Backstop.

Since *Fuld*, lower federal courts have recognized that the decision fundamentally reshaped the constitutional analysis governing personal jurisdiction in federal-question cases. According to Westlaw, *Fuld* has been cited 67 times since it was decided in June 2025, 61 of which are from federal courts. Three citations within the Fifth Circuit and in federal courts sitting in Texas are not substantive applications of *Fuld*'s Fifth Amendment jurisdictional framework and do not address the Rule 4(k)(2) and nationwide-service issues presented here. Accordingly, the decisions that warrant attention here are the post-*Fuld* decisions from other circuits that substantively analyze the new state of the law.

The decisions that have substantively applied Fuld in federal statutory cases converge on a common formulation: when Congress authorizes nationwide service of process, the constitutional inquiry under the Fifth Amendment centers on whether there exists a "meaningful nexus" between (1) the defendant's conduct, (2) the United States, and (3) the federal claim

---

[12] *Id.*

asserted.[13] In *King v. Bon Charge*, the District of Delaware distilled *Fuld* into three principles consistent with this formulation. First, the Fifth Amendment standard is "more flexible" than the Fourteenth Amendment minimum-contacts framework.[14] Second, minimum contacts are not imported into the Fifth Amendment, although a defendant's contacts with the United States remain relevant to determining whether jurisdiction is constitutionally sound.[15] Third, courts may consider reasonableness—but only as a contextual safeguard, not as a reinstatement of state-centered doctrine. [16]

That "meaningful nexus" requirement performs precisely the limiting function contemplated in *Fuld*: it ensures that federal jurisdiction is tethered to conduct that bears a real connection to American interests, without resurrecting the Fourteenth Amendment's state-focused minimum-contacts test, which Fuld expressly rejected.[17] The inquiry is national in scope and sovereignty-based. It asks whether the defendant's conduct is sufficiently connected to the United States to justify the Nation's exercise of adjudicative authority. Crucially, the nexus requirement does not demand proof that the

---

[13] *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, No. 1:24-CV-00744 (JLR), 2025 WL 3022826, at *5 (S.D.N.Y. Oct. 29, 2025).

[14] *King v. Bon Charge*, No. 25-CV-00105-SB, 2025 WL 3764039, at *4 (D. Del. Dec. 30, 2025).

[15] *Id.*

[16] *Id.*

[17] *Orient Plus*, 2025 WL 3022826, at *5 (noting that "the Court must [] be mindful not to embrace a thinly disguised minimum-contacts test, which the *Fuld* Court explicitly rejected").

defendant acted with the specific purpose of targeting the United States. It is satisfied where the evidence supports the conclusion that the defendant was merely aware that his conduct would have effects in the United States.[18]

Courts applying Fuld have expressly recognized that Civil RICO applies to transnational racketeering activity and that Congress intended it to reach foreign actors whose conduct meaningfully implicates the United States. As the court explained in *Orient Plus*, where "Congress expressly intends for a statute to apply extraterritorially, the burden is a heavy one for a defendant seeking to show that extraterritorial application of the statute violates due process."[19] That principle applies squarely to RICO. In *Mossi*—a post-*Fuld* decision applying the Supreme Court's clarified Fifth Amendment framework in a civil RICO case—the court emphasized that RICO applies to "foreign racketeering activity" and that "Congress did not limit [the statute] to domestic enterprises," so long as the enterprise has an "anchor" in U.S. commerce and the plaintiff demonstrates domestic injury.[20] In other words, Congress deliberately structured Civil RICO to address precisely the type of

---

[18] *Id.* ("The 'nexus' requirement is satisfied where, although it may be true that the defendant did not act with the specific purpose of harming interests of or related to the United States, the evidence supports the conclusion that he was aware that [his] conduct would have such an effect.") (internal quotations and citations omitted).

[19] *Id.* (internal quotations and citations omitted).

[20] *Cent. Am. Bank for Econ. Integration v. Mossi*, No. 24-CV-2544 (CRC), 2025 WL 2732731, at *10 (D.D.C. Sept. 25, 2025) (quoting *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 340 (2016)).

coordinated, cross-border schemes that affect American commerce and American victims.

Finally, post-*Fuld* courts recognize that any Fifth Amendment reasonableness analysis operates as a narrow safeguard—not as an independent hurdle capable of overriding Congress's decision to authorize extraterritorial application of a federal statute. The *King* case confirms that, although courts may consider reasonableness, the standard is flexible and context-driven, and modern litigation realities substantially diminish the weight of a foreign defendant's claimed burden.[21] There, the court rejected arguments that defending a federal action from abroad was constitutionally unfair, emphasizing that defendants retain U.S. counsel, exchange documents electronically, and litigate through remote communications as a matter of routine practice.[22] The court further recognized that such practical considerations do not outweigh the United States' strong interest in enforcing federal law.[23] Other courts have stated this principle even more emphatically. Where an action "is brought under a federal law which provides for nationwide service of process, the reasonableness inquiry is largely academic because of the strong federal interests involved."[24]

---

[21] *King*, 2025 WL 3764039, at *6.

[22] *Id.*

[23] *Id.*

[24] *Orient Plus*, 2025 WL 3022826, at *4.

### IV. Under Any Reading of *Fuld*, Personal Jurisdiction Over Wei-Ning Sun Is Constitutionally Sound.

Under the framework articulated in *Fuld* and applied by the lower courts, the question is whether Defendant Wei-Ning Sun's conduct bears a meaningful nexus to the United States in connection with Plaintiff's civil RICO claim. It does.

As alleged in the Third Amended Complaint and detailed in Plaintiff's Opposition to the Motion to Dismiss, this case arises from a coordinated transnational "pig-butchering" cryptocurrency fraud scheme that targeted and injured a United States citizen. The enterprise, in which Defendant Sun was an active participant, affirmatively reached out a U.S. citizen using a U.S.-based dating app, messaged with him for months using a U.S.-based messaging service, fraudulently induced him to transfer millions of dollars using U.S.-based cryptocurrency exchanges, and ultimately stored proceeds of its criminal conduct in a U.S.-based cryptocurrency.

The alleged racketeering activity caused domestic injury to a U.S. victim and implicated U.S. commerce—precisely the type of conduct Congress intended civil RICO to reach. And this case does not arise in isolation. So-called "pig-butchering" schemes have evolved into a national 'scamdemic,' siphoning billions of dollars each year from American victims through coordinated, cross-border criminal enterprises. The United States has not merely a meaningful interest, but an urgent sovereign interest in ensuring

that its courts remain available to address and deter this rapidly expanding form of transnational racketeering.

These allegations far exceed the constitutional minimum contemplated by the post-*Fuld* cases. Nor does any reasonableness consideration alter that conclusion. Modern litigation realities eliminate any credible claim of constitutional unfairness, and the United States has a compelling sovereign interest in providing a federal forum to redress large-scale cross-border racketeering activity that harms its residents. In short, under *Fuld* and the meaningful nexus standard articulated by the lower courts, the exercise of personal jurisdiction over Defendant Sun is constitutionally sound.

Dated: February 13, 2026         Respectfully submitted,

THE HODA LAW FIRM, PLLC

*[signature: M Hoda]*

Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
3120 Southwest Fwy. Ste. 101
PMB 51811
Houston, TX 77098
o. (832) 848-0036
marshal@thehodalawfirm.com

*Attorney for Plaintiff*