IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| Bruce Cohn,<br><br>   *Plaintiff,*<br><br> v.<br><br>Anna Popescu, et al.,<br><br>   *Defendants*. | Civil Action No. 1:24-cv-00337-MJT |

**DEFENDANT JOHN DOE'S SUPPLEMENTAL MEMORANDUM OF LAW
REGARDING *FULD V. PALESTINE LIBERATION ORGANIZATION***

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

David Oliwenstein
Max A. Winograd
Andrew Wiktor
31 West 52nd Street
New York, New York 10019-6131
Tel.: (212) 858-1000
Fax.: (212) 858-1500

William D. Wood
609 Main Street
Suite 2000
Houston, Texas 77002
Tel.: (713) 276-7600
Fax.: (713) 276-7673

*Attorneys for Defendant John Doe*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.   The Facts of *Fuld* Concern a Narrow Grant of Jurisdiction ............................................... 2

    II.  The Exercise of Jurisdiction Over Mr. Sun Fails Plaintiff's Own Test .............................. 5

    III. The Post-*Fuld* Cases Plaintiff Cites Are Inapposite ........................................................... 6

    IV. Congress Has Not Authorized Jurisdiction Over Mr. Sun ................................................. 7

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

Cases

*Cent. Am. Bank for Econ. Integration v. Mossi*,
  No. 24-cv-2544, 2025 WL 2732731 (D.D.C. Sept. 25, 2025)..........................................4, 6, 7

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ................................................................................................9

*In re Diisocyanates Antitrust Litig.*,
  No. 18-1001, 2026 WL 233978 (W.D. Pa. Jan. 29, 2026) .......................................................8

*Fairfield Sentry Ltd. V. ABN Amro Schweiz AG (In re Fairfield Sentry Limited)*,
  671 B.R. 404 (Bankr. S.D.N.Y., 2025) ...................................................................................4

*Fuld v. Palestine Liberation Organization*,
  606 U.S. 1 (2025)............................................................................................................ *passim*

*Harris* v. *United States*,
  536 U.S. 545 (2002)..............................................................................................................10

*King v. Bon Charge*,
  No. 25-cv-00105, 2025 WL 3764039 (D. Del. Dec. 30, 2025) (Bibas, J.).........................2, 4, 7

*United States* v. *Kozminski*,
  487 U.S. 931 (1988)..............................................................................................................10

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
  No. 24-cv-00744, 2025 WL 3022826 (S.D.N.Y. Oct. 29, 2025).............................................7

*United States* v. *Pettus*,
  303 F.3d 480,486 (2d Cir. 2002)..........................................................................................10

*Robert L. v. Madison Square Boys & Girls Club*,
  241. N.Y.S.3d 845 (N.Y. Sup. Ct. 2025) ...............................................................................2

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*,
  99 F.3d 717 (5th Cir. 1996) .................................................................................................10

Statutes and Codes

United States Code
    Title 15, Section 22 ..................................................................................................8
    Title 15, Section 715i ...............................................................................................9
    Title 15, Section 717u ..............................................................................................9
    Title 15, Section 1719 ..............................................................................................9
    Title 16, Section 825p .............................................................................................9
    Title 21, Section 360pp(c) ........................................................................................9
    Title 50, Section 4556(b) .........................................................................................9

Rules and Regulations

Federal Rule of Civil Procedure
    Rule 4(k)(2) ....................................................................................................5, 9, 10

Defendant John Doe, Wei-Ning Sun, respectfully submits this memorandum of law in response to the Court's January 30, 2026 order, ECF No. 110, and in opposition to Plaintiff Bruce Cohn's supplemental memorandum of law, ECF No. 115.

## PRELIMINARY STATEMENT

The Supreme Court's decision in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025) does not "bless more attenuated assertions of jurisdiction" of the sort Plaintiff advocates for here. *Id*. at 18. *Fuld* did not hold that a civil RICO defendant that lacked any contacts with the United States may be haled into a United States court. Whatever contacts are sufficient to satisfy the Fifth Amendment test under *Fuld*, they have not been met with respect to Mr. Sun.

*Fuld* must be read in the context of the facts before the Supreme Court. Faced with an exceedingly narrow amendment to an anti-terrorism statute that was modified by Congress to enumerate specific, limited circumstances in which two organizations would be subject to jurisdiction in the United States, the Supreme Court easily determined that the law at issue was constitutional. Part of its rationale was that the two organization were "on full notice" that they would be subject to jurisdiction in the United States if they engaged in certain conduct. *Id.* at 4, 22. By contrast, the civil RICO statute does not come close to putting foreign defendants such as Mr. Sun on notice that mere potential receipt of assets could embroil them in a protracted racketeering litigation and subject them to jurisdiction in the United States. (*See* Section I below.)

Plaintiff cannot satisfy the very reading of *Fuld* that he urges the Court to adopt. According to Plaintiff, each defendant's conduct must be "meaningfully connected to the United States." ECF No. 115 at 2, 5. There is no allegation anywhere in the Third Amended Complaint to suggest Mr. Sun had any contacts with the United States, much less meaningful ones. Plaintiff therefore flunks his own test. (Section II.) Plaintiff's failure is further illuminated by the post-*Fuld* cases

on which Plaintiff relies, each of which concerned defendants who had significant contacts with the United States, including living and working in America. (Section III.) Finally, the *Fuld* decision makes clear that courts must evaluate personal jurisdiction in accord with the jurisdiction-granting federal statute at issue. Nothing in the civil RICO statute authorizes federal courts to exercise jurisdiction over Mr. Sun. (Section IV.)

For the foregoing reasons and those identified in Mr. Sun's pending Motion to Dismiss, Mr. Sun respectfully requests that the Court dismiss the Third Amended Complaint.

## ARGUMENT

### I. The Facts of *Fuld* Concern a Narrow Grant of Jurisdiction

Plaintiff's supplemental memorandum ignores the facts of *Fuld*, which involved a narrow grant of jurisdiction. In *Fuld* the Supreme Court "upheld the specific law at issue," which was "enacted in response to an 'urgent objective' (combatting terrorism), applicable to a 'narrow category of claims,' and triggered by a limited set of activities connected to the United States or its citizens." *King v. Bon Charge*, No. 25-cv-00105, 2025 WL 3764039, at *4 (D. Del. Dec. 30, 2025) (Bibas, J.) (citation omitted).[1] Specifically, Congress passed the Promoting Security and Justice for Victims of Terrorism Act in 2019 (the "Act") for the particular purpose of deeming two terrorist organizations—the Palestine Liberation Organization ("PLO") and the Palestine Authority ("PA")—"to have consented to personal jurisdiction in civil suits brought in the United States under the Antiterrorism Act" "if they engage in specified conduct." *Fuld v. Palestine Liberation Organization*, 606 U.S. 1, 5–6 (2025). The Act was passed in direct response to the Second Circuit

---

[1] *See also Robert L. v. Madison Square Boys & Girls Club*, 241. N.Y.S.3d 845, 852 n.2 (N.Y. Sup. Ct. 2025) ("Congress had expressly tied federal jurisdiction to narrow, well-defined factual predicates involving the defendants' U.S.-based activities or payments linked to acts of terrorism injuring U.S. nationals. The Supreme Court emphasized that such jurisdictional provisions were permissible because they were 'suitably limited,' directly related to the United States, and provided clear notice to the defendants that their conduct could subject them to litigation.").

2

reversing an award of damages against the PLO on the grounds that the district court lacked personal jurisdiction over the defendant. *Id.* at 7–8. To ensure that specific reversal would not stand, Congress added a subsection to the Act titled "Jurisdictional Amendments to Facilitate Resolution of Terrorism-Related Claims of Nationals of the United States." *Id.* at 8. The revised Act "refer[red] to the PA and PLO by name" and spelled out two limited circumstances in which those organizations' actions would subject them to the United States's jurisdiction. *Id.* at 8–9.

The Supreme Court granted *certiorari* to determine whether the Act's grant of personal jurisdiction over two entities specifically named by Congress violated the Due Process Clause of the Fifth Amendment. *Id.* at 8–9. The Court concluded that it did not based on four observations. *First*, the Act permitted federal courts to exercise jurisdiction over two organizations for conduct that was "closely related to the United States," *id.* at 18—(i) sending payments to terrorists or their families after those terrorists "injured or killed a national of the United States," or (ii) continuing to operate a facility on U.S. soil after a specific period of time, *id.* at 8–9. Indeed, the Court noted that it was "wary to reach further and bless more attenuated assertions of jurisdiction," *id.* at 18, such as the mere receipt of assets in a civil RICO case. *Second*, that "Congress and the President" had passed the Act to specifically permit the exercise of jurisdiction in limited circumstances reflected a "balanced judgment of competing concerns" that included "fairness to the[] particular defendants." *Id.* at 19–20. As discussed more fully below, the RICO statute does not reflect a similar deliberative process. *Third*, because the Act was "narrow," a finding that the Court repeated five times, it did not put would-be defendants "at broad risk of being haled into U. S. courts for myriad civil liability actions." *Id.* at 20. Indeed, the Court noted that the Act was "[f]ar from haling just any run-of-the-mill private defendant into American courts," *id.* at 22, much like Plaintiff seeks to do here. *Finally*, "the statute's targeted applicability put the PLO and PA on full

3

notice that they could be subject 'to personal jurisdiction.'" *Id.* at 22. None of these four observations is remotely applicable to RICO.

In finding the Act's explicit and narrow grant of jurisdiction constitutional, the Court pronounced that "to the extent that the Due Process Clauses of the Fourteenth and Fifth Amendments both implicitly limit the jurisdictional authority of courts . . . the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry." *Id.* at 16. While the Court found that the Fourteenth Amendment's minimum contacts analysis did not apply to the Fifth Amendment, it found that there might be a similar reasonableness inquiry under both Amendments. *Id.* at 23. Because the Act was so plainly reasonable "even under the Fourteenth Amendment," however, the Court did "not determine whether such [a reasonableness] analysis is constitutionally required" under the Fifth Amendment or, if so, whether it would encompass the same three factors as those considered under the Fourteenth Amendment. *Id.* at 23–24. Some lower courts have followed this approach, applying the Fourteenth Amendment standard and finding that "if personal jurisdiction would be constitutional under the pre-*Fuld* nationwide minimum-contacts standard, then jurisdiction is *a fortiori* constitutional under *Fuld*." *Bon Charge*, 2025 WL 3764039, at *4; *Cent. Am. Bank for Econ. Integration v. Mossi*, No. 24-cv-2544, 2025 WL 2732731, at *8 (D.D.C. Sept. 25, 2025) (alteration in original) (citation omitted) ("Any defendant possessing 'sufficient minimum contacts with the relevant forum would also satisfy the more flexible personal jurisdictional standards set forth in *Fuld*.'"); *Fairfield Sentry Ltd. V. ABN Amro Schweiz AG (In re Fairfield Sentry Limited)*, 671 B.R. 404, 418 (Bankr. S.D.N.Y., 2025) (similar). There is no credible argument that Plaintiff can satisfy the traditional minimum contacts standard.

4

## II.     The Exercise of Jurisdiction Over Mr. Sun Fails Plaintiff's Own Test

Following *Fuld*, what remains clear is that the framework of Federal Rule of Civil Procedure 4(k)(2)—which is not referenced at all in *Fuld*—remains intact.  That is, when a court is confronted with "a claim that arises under federal law," as the court is here, personal jurisdiction can be established over a defendant only if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  While the precise contours of 4(k)(2)(B) may be unsettled after *Fuld*, the Court need not determine those contours in connection with Mr. Sun's motion because jurisdiction is improper even under the standard Plaintiff proposes.

Plaintiff contends that under *Fuld*, "Rule 4(k)(2) properly aggregates *a* defendant's contacts with the United States as a whole" and courts may exercise personal jurisdiction over that defendant if "federal interests are substantial and ***the defendant's conduct is meaningfully connected to the United States***."  ECF No. 115 at 2 (emphasis added); *id.* at 9 (similar).  Plaintiff contends that as long as "the defendant was merely aware that ***his conduct*** would have effects in the United States," the meaningful connection to the United States is satisfied.  *Id.* at 6–7 (emphasis added).[2]  Here, the Third Amended Complaint does not allege any "conduct" by Mr. Sun at all.  There is no allegation that Mr. Sun was aware that the potential receipt of $99,801 of Plaintiff's funds that someone else had converted to "USDC," ECF No. 70 at ¶¶ 28, 30–31, would have *any* effect in the United States, and there is no reading of the Third Amended Complaint that suggests Mr. Sun's conduct "is meaningfully connected to the United States."  In fact, at oral argument on

---

[2] This, of course, is far different from the standard Plaintiff previously advocated for:  "Under *Fuld*'s flexible national-contacts framework, this Court should hold that in international cyber-scam cases, under RICO, the nationwide contacts of the *entire syndicate* may be imputed to each member for jurisdictional purposes."  ECF No. 94 at 16 (emphasis in original).  Neither standard Plaintiff has offered is rooted in *Fuld*'s language, making it easy for Plaintiff to switch from one to the other.

5

the Motion to Dismiss, the Court asked Plaintiff to identify any allegations that showed Mr. Sun "targeted the United States," and all Plaintiff could muster were unsubstantiated examples of others' conduct. *See* Declaration of David Oliwenstein, Ex. A at 17:15–18:13. Even accepting Plaintiff's formulation of the law under *Fuld* as true, this court lacks jurisdiction.

Plaintiff tried to bolster his one allegation against Mr. Sun in his Opposition to Mr. Sun's Motion to Dismiss, noting that "[t]he asset held at the six frozen addresses owned by Sun is called *United States Dollar Coin*," which Plaintiff noted was created by a Delaware corporation with headquarters in New York. ECF No. 94 at 10 (emphasis in original). But this too falls woefully short of Plaintiff's own standard. This additional fact, which is not in the operative Complaint, is insufficient, including under one of the post-*Fuld* cases on which Plaintiff relies. In *Mossi*, the court found that that some of defendant's alleged "nationwide contacts" were "especially weak" and did "nothing to shore up personal jurisdiction." 2025 WL 2732731, at *10. One such example was defendant posting statements on "American social media websites." *Id.* at *10, *10 n.4. That conduct—using websites to broadcast ideas into the United States—is actually *more* connected to the United States than Mr. Sun's passive receipt of funds. In all events, "*Fuld* underscores that jurisdiction cannot rest on attenuated or tangential contacts divorced from the events giving rise to the claims." *Madison Square Boys & Girls Club*, 241 N.Y.S.3d at 852 n.2.

### III. The Post-*Fuld* Cases Plaintiff Cites Are Inapposite

While in *Mossi*, a civil RICO case, the court determined it had personal jurisdiction over the defendant based on the sum of that defendant's contact with the United States, those contacts were far more involved than the single allegation against Mr. Sun. There, the defendant "continuously maintained home addresses and mailing addresses in various states across the United States" for more than 15 years; owned a home in Virgina; owned an apartment in

6

Washington, D.C.; operated a Virginia-based business for two years; worked in D.C.; listed his D.C. apartment on job applications; "regularly" traveled to the U.S.; was apparently in D.C. when a process server attempted to serve him; and engaged in conduct relevant to the allegations in New York. 2025 WL 2732731, at *1, *1 n.1, 9. By contrast, Mr. Sun is alleged to possibly have received a small portion of the funds at issue while outside the United States, from someone also outside the United States. ECF No. 70 at ¶¶ 28, 30.[3]

The two additional cases cited by Plaintiff also involve more extensive contacts between the defendant and the forum than are present here. In *Bon Charge*, a telemarketing company repeatedly sent text messages to U.S. phone numbers over the course of several years; offered "promotions for American holidays and events like Labor Day, the Fourth of July, and Black Friday;" advertised products that "were HSA and FSA eligible, a feature relevant only to American consumers;" and ran marketing campaigns "targeting potential customers in the United States." 2025 WL 3764039, at *5. And in *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, the defendant "reside[d] and work[ed] in the United States and [did] not dispute that he was properly served." No. 24-cv-00744, 2025 WL 3022826, at *3 (S.D.N.Y. Oct. 29, 2025). Comparing those facts to Mr. Sun's potential receipt of funds is apples to oranges.

### IV.     Congress Has Not Authorized Jurisdiction Over Mr. Sun

In addition to failing the Fifth Amendment's reasonableness analysis, the exercise of jurisdiction over Mr. Sun is not authorized by any applicable long-arm statute or rule. The absence of any Congressional authorization of jurisdiction requires that the Third Amended Complaint be dismissed at to Mr. Sun for lack of personal jurisdiction.

---

[3] Although the *Mossi* court found it had personal jurisdiction over the defendant, it ultimately dismissed the civil RICO claims against him with prejudice for failure to state a claim. *Id.* at *18. *Fuld* is irrelevant if Plaintiff fails to state a claim under RICO, as Texas's long-arm statute applies to Plaintiff's common law claims and Plaintiff does not allege any contacts with Texas whatsoever. See ECF No. 90 at 11.

As observed last month by another district court, regardless of any constitutional limitations under the Fifth Amendment, *Fuld* underscores the importance of courts evaluating personal jurisdiction "in accord with the jurisdiction-granting federal statute at issue." *In re Diisocyanates Antitrust Litig.*, No. 18-1001, 2026 WL 233978, at *4 (W.D. Pa. Jan. 29, 2026). In *In re Diisocyanates*, the court analyzed the contours of *Fuld* to determine whether it could exercise jurisdiction over several foreign defendants sued in Pennsylvania for alleged violations of the Clayton Act. *Id.* As part of that analysis, the court observed that the Clayton Act's jurisdiction-granting provision—which is essentially a nationwide service provision (*see* 15 U.S.C. § 22)—was materially different from the relevant statute in *Fuld*, which explicitly granted federal courts jurisdiction over two organizations for two specific categories of conduct. *Id.* at *3-*4 (describing the PSJVTA and noting that "*Fuld* directs courts to evaluate personal jurisdiction in accord with the jurisdiction-granting federal statute at issue"). Because Congress did not evince a clear intent to expand the Clayton Act's reach beyond traditional notions of jurisdiction, the Court found "that some showing of minimum contacts and purposeful availment with the United States remains necessary to establish personal jurisdiction in federal antitrust cases" and concluded that it lacked jurisdiction. *Id.*[4]

The court's holding in *In re Diisocyanates* is compelled by the logic of *Fuld*. In *Fuld,* the Supreme Court concluded that the exercise of jurisdiction was proper in large part because Congress could not have been clearer in indicating its intent. *See Fuld*, 606 U.S. at 8–9. Even Justice Thomas's concurrence, which argued for a more permissive Fifth Amendment test than that embraced by the majority, observed that if Congress intends to remove all limits on extraterritorial jurisdiction, it must do so with a "clear statutory command." *See id.* at 38.

---

[4] Like Plaintiff here, the plaintiffs in *In re Diisocyanates* argued that "the effects of Defendants' tortious conduct in the United States" permitted the exercise of personal jurisdiction, to no avail. 2026 WL 233978, at *1.

8

Congress has indicated no such intent with respect to RICO. In fact, Congress appears to have made a deliberate choice to constrain the extent to which RICO applies to extraterritorial conduct. While Congress has enacted many statutes that contain worldwide service provisions, Congress declined to do so for RICO and instead opted for a significantly narrower nationwide service of process provision. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000) ("The RICO and ERISA service of process provisions state that service may be made in "any district," which indicates that Congress authorized service only in the judicial districts of the United States and not worldwide. In comparison, Congress authorized worldwide service in laws stating that service could be made "wherever the defendant may be found," or similar language, which is not limited to the judicial districts of the United States." (citation omitted)).[5] RICO lacks the "clear statutory command" that *Fuld* requires as a prerequisite to the exercise of jurisdiction without minimum contacts. 606 U.S. at 38.

Nor can the requisite Congressional authorization be found in Rule 4(k)(2). For claims arising under federal law, Rule 4(k)(2) establishes personal jurisdiction over a defendant if, in relevant part, exercising jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2). As discussed above, the exercise of jurisdiction over Mr. Sun is not consistent with the law—i.e., RICO. Nor would it satisfy the rule's requirement that the exercise of jurisdiction be "consistent with the United States Constitution." Fed. R. Civ. P. 4(k)(2)(B). Regardless of the precise contours of the Fifth Amendment's reasonableness test, Plaintiff has not alleged *any* nexus between Mr. Sun and the United States. *See supra* Section II.

---

[5] By contrast, and by way of example, the following statutes provide for worldwide service: 15 U.S.C. § 1719 (Interstate Land Sales Full Disclosure Act); 16 U.S.C. § 825p (Federal Power Act § 317); 15 U.S.C. § 715i (Interstate Transportation of Petroleum Products); 15 U.S.C. § 717u (Natural Gas Act § 22); 21 U.S.C. § 360pp(c) (Electronic Product Radiation Control enforcement); and 50 U.S.C. § 4556(b) (Defense Production Act).

But the Court need not determine the contours of the Fifth Amendment's jurisdictional test because, unless and until Congress says otherwise, Rule 4(k)(2) continues to require a showing of minimum contacts. When a rule incorporates a constitutional provision, courts should interpret the rule "consistent with the understanding" of the constitution at the time of the rule's enactment. *See United States* v. *Kozminski,* 487 U.S. 931, 945 (1988); *United States* v. *Pettus,* 303 F.3d 480,486 (2d Cir. 2002) (rejecting statutory interpretation "under which the text might mean one thing when enacted yet another if the prevailing view of the Constitution later changed" (quoting *Harris* v. *United States,* 536 U.S. 545, 556 (2002)). At the time of Rule 4(k)(2)'s adoption in 1993, the Advisory Committee memorialized its understanding that the phrase "consisted with the United States Constitution" requires "contacts with the United States sufficient to justify" the exercise of personal jurisdiction over that party. Fed. R. Civ. P. 4(k)(2) Advisory Committee's note to 1993 amendment. And consistent with that prevailing understanding at the time of the Rule's adoption, the Fifth Circuit (and other Courts of Appeals) held that the rule requires a showing of minimum contacts. *See, e.g.*, *World Tanker Carriers Corp. v. M/V Ya Mawlaya,* 99 F.3d 717, 719-20 (5th Cir. 1996). Plaintiff has not pled even one jurisdictional meaningful contact between Mr. Sun and the United States. Accordingly, it would be unreasonable and inconsistent with the Constitution to assert jurisdiction over Mr. Sun.

## CONCLUSION

For the foregoing reasons, Mr. Sun respectfully requests that the Court grant his motion and dismiss the claims against him for lack of personal jurisdiction.

Dated: February 26, 2026　　　　　　　　　Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

10

By: */s/ David Oliwenstein*
David Oliwenstein
Max A. Winograd
Andrew Wiktor
31 West 52nd Street
New York, New York 10019-6131
Tel.: (212) 858-1000
Fax.: (212) 858-1500
david.oliwenstein@pillsburylaw.com
max.winograd@pillsburylaw.com
andrew.wiktor@pillsburylaw.com

William D. Wood
609 Main Street
Suite 2000
Houston, Texas 77002
Tel.: (713) 276-7600
Fax.: (713) 276-7673
william.wood@pillsburylaw.com

*Attorneys for Defendant John Doe*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a)(3). As such, this document was served on all parties appearing in the above-captioned case who have consented to electronic service via the Court's CM/ECF system on February 26, 2026.

                                            By: */s/ David Oliwenstein*
                                                    David Oliwenstein